# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Case No.

17-1831

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,

Intervenor-Appellant.

v.

ASSURED GUARANTY CORP., et al.,

Plaintiffs-Appellees,

v.

THE COMMONWEALTH OF PUERTO RICO, et al.,

Defendants,

Appeal from the United States Bankruptcy Court
for the District of Puerto Rico

# BRIEF OF APPELLANT

*Counsel Listed on Inside Cover*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq.
USDC - PR 218312
Diana M. Batlle-Barasorda, Esq.
USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq.
USDC - PR 302710
Ericka C. Montull-Novoa, Esq.
USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

PAUL HASTINGS LLP
Luc. A. Despins, Esq.
James B. Worthington, Esq.
James T. Grogan III, Esq.
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

William K Whitner, Esq.
Eric D. Stolze, Esq.
1170 Peachtree St., N.E., Suite 100
Atlanta, Georgia 30309
Telephone: (404) 815-2400
kwhitner@paulhastings.com
ericstolze@paulhastings.com
*(Admission Pending)*

*Counsel to the Official Committee of Unsecured Creditors*

Dated: August 23, 2017

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Committee") states that it is an official statutory creditors' committee appointed under and pursuant to section 301 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA"), incorporating section 1102(a) of title 11 of the United States Code, for which no corporate disclosure statement is required because the Committee is not a nongovernmental corporate party and has no shareholders.

# TABLE OF CONTENTS

**PAGE**

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ............................ 1

JURISDICTIONAL STATEMENT ............................ 1

STATEMENT OF ISSUES ............................ 3

STANDARD OF REVIEW ............................ 4

STATEMENT OF CASE ............................ 5

I. PUERTO RICO'S TITLE III CASE FILED PURSUANT TO PROMESA ............................ 5

II. THIS ADVERSARY PROCEEDING WAS FILED WITHIN COMMONWEALTH'S TITLE III CASE ............................ 6

III. COMMITTEE'S MOTION TO INTERVENE AND OVERSIGHT BOARD'S CONSENT TO LIMITED PARTICIPATION ............................ 8

SUMMARY OF ARGUMENT ............................ 10

ARGUMENT ............................ 15

I. DISTRICT COURT'S ERRONEOUS RULING DEPRIVES COMMITTEE OF ESSENTIAL STATUTORY RIGHT UNDER SECTION 1109(B) AND INHIBITS FULFILLMENT OF ITS BROADER DUTIES & RESPONSIBILITIES UNDER THE BANKRUPTCY CODE ............................ 15

II. LINCHPIN OF DISTRICT COURT'S REASONING, *IN RE THOMPSON*, IS DECADES-OLD AND ONLY COMMENTS ON INTERVENTION THROUGH DICTA IN PASSING EXAMPLE ............................ 20

III. DISTRICT COURT ERRED IN CONCLUDING, CONTRARY TO REASONED AND RECENT APPROACHES OF OTHER CIRCUITS, THAT SECTION 1109(B) DOES NOT ENABLE COMMITTEE'S INTERVENTION IN ADVERSARY PROCEEDING AS MATTER OF RIGHT ............................ 24

  A. An Adversary Proceeding is "Within" Bankruptcy "Case" (Not Separate and Distinct From It), So Section 1109(b)'s Authorization to "Appear and Be Heard" on Any Issue *in the Case* Subsumes Adversary Proceeding ............................ 26

**TABLE OF CONTENTS**
(continued)

**PAGE**


B. Second and Third Circuits' Approaches Present Textually Superior and Policy-Appropriate Application of Section 1109(b), an Issue Remaining One of First Impression in First Circuit ....... 29

1. Relying on the Plain Meaning of Section 1109(b), Third Circuit in *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982), Determined Case Necessarily Includes Adversary Proceedings ....... 30

2. Disregarding Established Rules of Statutory Construction, Fifth Circuit Manufactured Its Desired Result in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir. 1985) ....... 33

3. In Well-reasoned Opinion Following Rules of Statutory Construction and Exposing Illegitimacy of Looking Beyond the Plain Meaning of Section 1109(b), Second Circuit in *Term Loan Holder Comm v. Ozer Group, LLC,* (*In re Caldor*) 303 F.3d 161, 168 (2d Cir. 2002) Held "Case" Necessarily Includes Adversary Proceedings....... 35

C. This Court Should Adopt Well-Reasoned Holdings of Second and Third Circuits....... 39

D. Surely, Congress Did Not Intend Party in Interest's Right to Be Heard to Hinge on Whim of Framer of Pleadings (*i.e.*, Litigating by Adversary Proceeding or Motion.)....... 41

IV. SECTION 1109(B)'S STATUTORY MANDATE DOES NOT REQUIRE ANY ADDITIONAL HURDLE OF FEDERAL RULE 24 BE MET FOR INTERVENTION, AND IS ALONE SUFFICIENT TO SATISFY FEDERAL RULE 24(A)(1)....... 44

A. Procedural Rules Cannot Abridge Section 1109(b)'s Absolute Substantive Right to Appear and Be Heard on "Any Issue"....... 44

B. To Extent Federal Rule 24(a)(1) Does Govern Committee's Efforts to Be Heard on "Any Issue" in Adversary Proceeding, Committee Satisfies Its Requirements ....... 46

**TABLE OF CONTENTS**
(continued)

**PAGE**

V. PROCEDURAL ASPECTS OF INTERVENTION ASIDE, DISTRICT COURT COMPOUNDED ERROR BY DENYING COMMITTEE ANY MEANS OF PARTICIPATION IN ADVERSARY PROCEEDING WHATSOEVER, EVISCERATING SECTION 1109(B) ....47

A. District Court's Dual Determinations That Intervention Is *Only* Means of Participation—But Section 1109(b) Provides No Pathway to Intervene—Renders Committee Entirely Shut-Out and Nullifies Section 1109(b) ....47

B. Rights and Roles Congress Conferred with Section 1109(b) Are Situation-Specific, But Must Mean Something, and Necessarily Include "Limited Intervention" Committee Sought....52

CONCLUSION ....54

**ADDENDUM:** **Page**

ORDER DENYING MOTION TO INTERVENE....ADD-1

PROMESA SECTIONS 301, 306, 307, AND 310....ADD-4

FEDERAL RULE OF CIVIL PROCEDURE 24 ....ADD-13

FEDERAL RULE OF BANKRUPTCY PROCEDURE 7024 ....ADD-18

11 U.S.C. 1102....ADD-19

28 U.S.C. § 1291 ....ADD-21

OMNIBUS HEARING TRANSCRIPT EXCERPT AUG 9, 2017....ADD-22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Communs., Corp.*,
285 B.R. 848 (Bankr. S.D.N.Y. 2002) ....................51, 53, 54

*Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corp. (In re Commonwealth of Puerto Rico)*,
Adv. Proc. No. 17-00133 (LTS), (D. P.R. Aug. 1, 2017) (APP-388); ....................19

*Bell v. Bell (In re Bell)*,
225 F.3d 203 (2d Cir. 2000) ....................52

*In re Caldor*,
303 F.3d 161 ....................*passim*

*Caminetti v. United States*,
242 U.S. 470 (1917) ....................25

*Candelario Del Moral v. UBS Fin. Servs. Inc. of P.R.*
(In re Efron), 746 F.3d 30, 34 (1st Cir. 2014) ....................2

Comm. *Unsecured Creditors v. Interfirst Bank Dallas, N.A.* (*In re Wood & Locker, Inc.*),
868 F.2d 139 (5th Cir. 1989). ....................27

*D.H. Sharrer & Son, Inc. v. Sharrer Inv. Trust (In re D.H. Sharrer & Son, Inc.)*,
44 B.R. 976 (Bankr. M.D. Pa. 1984) ....................30

*In re Daig Corp.*,
17 B.R. 41 (Bankr. D. Minn. 1981) ....................15

*Fahey v. Mass. Dep't of Revenue (In re Fahey)*,
779 F.3d 1 (1st Cir. 2015) ....................4

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*,
762 F.2d 1283 (5th Cir. 1985) ....................*passim*

*Geiger v. Foley Hoag LLP*,
521 F.3d 60 (1st Cir. 2008).....51

*Hanover Indus. Mach. Co. v. American Can Co. (In re Hanover Indus. Mach. Co.)*,
61 B.R. 551 (Bankr. E.D. Pa. 1986).....30

*Int'l Paper Co. v. Inhabitants of Town of Jay*,
887 F.2d 338 (1st Cir. 1989).....5

*Kartell v. Blue Shield of Massachusetts, Inc.*,
687 F.2d 543 (1st Cir. 1982), *rev'd on other grounds* 749 F.2d 922 (1st. Cir. 1984).....2

*In re Keystone Realty Holding Co.*,
117 F.2d 1003 (3d Cir. 1941).....32

*Lex Claims, LLC v. Garcia-Padilla*,
No. 16-2374 (FAB), 2017 U.S. Dist. LEXIS 23248 (D. P.R. Feb. 17, 2017).....19

*Official Comm. Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003).....41

*Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*,
689 F.2d 445 (3d Cir. 1982).....*passim*

*Peaje Investments LLC, v. Puerto Rico Highways & Transportation Authority (In re Commonwealth of Puerto Rico)*,
Adv. Proc. No. 17-00151 (LTS), (D. P.R. Aug. 10, 2017) (APP-371);.....19

*Peaje Investments LLC, v. Puerto Rico Highways & Transportation Authority (In re Commonwealth of Puerto Rico)*,
Adv. Proc. No. 17-00151 (LTS), (D. P.R. July 21, 2017) (APP-361);.....19

*Phar-Mor, Inc. v. Coopers & Lybrand*,
22 F.3d 1228 (3d Cir. 1994).....16, 29

*Puerto Rico Hosp. v. Boston Scientific*,
426 F.3d 503 (1st Cir. 2005)........5

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
136 S. Ct. 1938 (2016)........40

*In re Refco Inc.*,
336 B.R. 187 (Bankr. S.D.N.Y. 2006)........15

*Richman v. First Woman's Bank*,
104 F.3d 654 (4th Cir. 1997)........34

*Sarah R. Neuman Found., Inc. v. Garrity (In re Neuman)*,
124 B.R. 155 (Bankr. S.D.N.Y. 1991)........30

*Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC)*,
423 F.3d 166 (2d Cir. 2005)........53

*In re Stoecker*,
179 F.3d 546 (7th Cir. 1999), *aff'd sub nom. Raleigh v. Illinois Dept. of Revenue*, 120 S. Ct. 1951 (2000)........45

*Taylor, Bean & Whitaker Mortgage Corp. v. Sovereign Bank (In re Taylor, Bean & Whitaker Mortgage Corp.)*,
No. 3:10-ap-0644-JAF, Doc. 33 (Bankr. M.D. Fla. Aug. 17, 2011)........51

*In re Thinking Machines Corp.*
67 F.3d 1021 (1st Cir. 1995)........4

*In Re Thompson*,
965 F.2d 1136 (1st. Cir. 1992)........*passim*

*Ungar v. Arafat*,
634 F.3d 46 (1st Cir. 2011)........2

*Unión de Trabajadores de la Industria Eléctrica y Riego v. Puerto Rico Elec. Power Auth.* (*In re The Financial Oversight and Management Board for Puerto Rico*), No. 17-00228-LTS, (D.P.R. Aug. 6 and 16, 2017)........42

*United States v. Gifford*,
17 F.3d 462, 472 (1st Cir. 1994)........4

*United States v. Gonzalez*,
311 F.3d 440 (1st Cir. 2002)....................24

*United States v. Holmquist*,
36 F.3d 154 (1st Cir.1994), cert. denied, 514 U.S. 1084, 115 S.Ct.
1797, 131 L.Ed.2d 724 (1995)....................4

*United States v. Ron Pair Enters., Inc.*,
489 U.S. 235 (1989)....................25

*United States v. Towers (In re Pacific Atlantic Trading Co.)*,
33 F.3d 1064 (9th Cir. 1994)....................46

*United States v. Waindel (In re Waindel)*,
65 F.3d 1307 (5th Cir. 1995)....................45

*Vermejo Park Corp. v. Kaiser Coul Corp.*,
998 F.2d 783 (10th Cir. 1993)....................35

**STATUTES**

2 U.S.C.
§ 1102(a)....................1

11 U.S.C.
§ 301....................31
§ 1102....................4
§ 1103(c)....................15
§ 1109....................21
§ 1109(b)....................*passim*

28 U.S.C.
§ 1291....................4, 2
§ 2072(b)....................45
§ 2075....................12, 45

**STATUTES (CONTINUED)**

Puerto Rico Oversight, Management and Economic Stability Act of 2016
§ 310 .......... 3, 24
§ 301(a) .......... 24
§ 304(a) .......... 5
§ 306(a) .......... 1
§ 306(e)(1) .......... 1
§ 306(e)(2) .......... 2
§ 307 .......... 2
§ 307(a) .......... 1

**RULES & REGULATIONS**

Federal Rules of Bankruptcy Procedure
10-210(a) .......... 31
10-210(b) .......... 32
101 .......... 27
701 .......... 31
1001 .......... 45
2018 .......... 37, 38
3002 .......... 45
3002(c) .......... 46
3020(b)(i) .......... 14, 43
7001 .......... 13
7001 through 7087 .......... 12
7003 .......... 12, 28, 31
7024 .......... 3, 12, 13
7024 .......... *passim*
7024 .......... 46
7024 .......... 46
7024 .......... 48
7024 .......... 54
9014 .......... 12, 26, 28, 43

Federal Rules of Civil Procedure
24 .......... *passim*
24(a)(1) .......... *passim*
24(a)(2) .......... 34
24(b) .......... 4, 14, 49, 50

## OTHER AUTHORITIES

*Collier on Bankruptcy*
¶ 3.01 .......... 28
¶ 1109.04 .......... 41

Mark D. Sherrill, *To Knock First or Barge Right In: Is a Chapter 11 Committee's Right to Intervene in Adversary Proceedings Absolute or Permissive?*, 23 Emory Bankr. Dev. J. 451 (2007) .......... 38

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

This appeal presents nuanced questions implicating the Bankruptcy Code and aiming to correct error in the District Court, which continues to cascade through one of most significant public bankruptcies in American history. Irrespective of outcome, substantive and procedural rights to be decided in this appeal will add to a longstanding split of authority between the Circuit Courts of Appeal on an issue of first impression in the First Circuit. A comprehensive argument on the varying perspectives in analytical approach and reasoning is expected to aid this Court's decision and the pace of resolution of this expedited appeal.

## JURISDICTIONAL STATEMENT

The original and exclusive subject matter jurisdiction of the United States District Court for the District of Puerto Rico (the "District Court") over this Title III PROMESA case is provided by PROMESA section 306(a). Because this case is with respect to a territory, venue is proper in the United States District Court for that territory, being the District of Puerto Rico, as established by PROMESA section 307(a).

PROMESA section 306(e)(1) confers appellate jurisdiction in the same manner as appeals in civil proceedings generally are taken to the Courts of Appeals

from the District Court. Therefore, appellate jurisdiction is proper under 28 U.S.C. § 1291.

On August 10, 2017, the District Court entered the Memorandum Opinion and Order Denying Motion to Intervene (Intervention Order, APP-310), which is a final order for purposes of appeal because it denied intervention as a matter of right, and permissive intervention through abuse of discretion.[1] The Committee timely filed its Notice of Appeal of the Intervention Order the following day, on August 11, 2017, and has diligently pursued the expedition of this appeal thereafter. (Notice of Appeal, APP-324).

---

[1] "The First Circuit has treated denials of motions to intervene of right as final, appealable orders" and noted an abuse of discretion in the denial of permissive intervention is a final, appealable order. *Kartell v. Blue Shield of Massachusetts, Inc.*, 687 F.2d 543 (1st Cir. 1982), *rev'd on other grounds* 749 F.2d 922 (1st. Cir. 1984) (citing *Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir. 1980); *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979); *Cameron v. President & Fellows of Harvard Coll.*, 157 F.2d 993 (1st Cir. 1946)); *see Candelario Del Moral v. UBS Fin. Servs. Inc. of P.R. (In re Efron)*, 746 F.3d 30, 34 (1st Cir. 2014) (holding it is "established beyond hope of contradiction . . . that courts of appeals have jurisdiction, on an interlocutory basis, to review the denial of motions to intervene as of right"); *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011) (order denying motion to intervene as of right is immediately appealable as collateral order); *see also* PROMESA section 306(e)(2) ("The court of appeals for the circuit in which a case under this title has venue pursuant to section 307 of this title shall have jurisdiction of appeals from all final decisions, judgments, orders and decrees entered under this title by the district court.").

## STATEMENT OF ISSUES[2]

1. Where the Official Committee of Unsecured Creditors has moved for limited participation through intervention in an adversary proceeding within a bankruptcy case in reliance on 11 U.S.C. § 1109(b) ("section 1109(b)"), does that statute constitute an "unconditional right to intervene by federal statute" such that intervention (in some form) is mandatory, consistent with Federal Rule 24(a)(1) and Bankruptcy Rule 7024?[3]

2. Where the Official Committee of Unsecured Creditors has moved for limited participation in an adversary proceeding within a bankruptcy case in reliance on section 1109(b):

i) whether section 1109(b) grants the Committee a mandatory right to "raise," "appear and be heard" on issues in the adversary proceeding; and

ii) if so, what involvement and participation does the Congressional mandate of section 1109(b) require the Committee be afforded?

---

[2] Insofar as neither the Intervention Order nor any aspect of the District Court's oral ruling on the Motion cast any doubt on the Committee's standing, the Committee does not enumerate this issue for appeal, but reserves the right to support its standing should it subsequently be placed at issue.

[3] The Federal Rules of Bankruptcy Procedure are referred to as "Bankruptcy Rules" and the Federal Rules of Civil Procedure as "Federal Rules." The Bankruptcy Rules apply in the case and "to all civil proceedings arising in or related to" the case. PROMESA § 310.

3. Did the District Court commit an error of law in the denial of the Official Committee of Unsecured Creditors' request for permissive intervention in an adversary proceeding under Federal Rule 24(b), insofar as (i) the Committee did identify common questions of law and fact and (ii) no basis for undue prejudice exits, particularly given the Committee's requested relief was narrowly tailored to the rights afforded by section 1109(b), avoiding any threat of undue expansion of litigation, and the Committee's Motion for Leave to Intervene (the "Motion") was brought promptly?

**STANDARD OF REVIEW**

Because the first two issues on appeal will be decided exclusively by interpretation of law and the meaning of a statute, plenary review applies. *Fahey v. Mass. Dep't of Revenue (In re Fahey)*, 779 F.3d 1, 3 (1st Cir. 2015) (citation omitted) ("Since no material facts are disputed and the issue before us turns entirely upon an interpretation of law, our review is plenary.); *In re Thinking Machines Corp.* 67 F.3d 1021 (1st Cir. 1995) ("This standard [of plenary review] is fully applicable here, as it is in all cases in which we are asked to decipher the meaning of a statute."); *United States v. Holmquist*, 36 F.3d 154, 158 (1st Cir.1994), cert. denied, 514 U.S. 1084, 115 S.Ct. 1797, 131 L.Ed.2d 724 (1995); United States v. Gifford, 17 F.3d 462, 472 (1st Cir. 1994). As to the third issue – although denial of permissive intervention is subject to review for abuse of

discretion, *Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 343 (1st Cir. 1989), "an error of law is always an abuse of discretion," *Puerto Rico Hosp. v. Boston Scientific*, 426 F.3d 503, 505 (1st Cir. 2005). The District Court's reasoning in denying permissive intervention was so tainted with errors of law that its ruling manifests an abuse of discretion.

## STATEMENT OF CASE

### I. PUERTO RICO'S TITLE III CASE FILED PURSUANT TO PROMESA

On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") commenced the largest proceeding to restructure debt in the history of the American municipal bond market by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA, thereby initiating this title III case for the Commonwealth of Puerto Rico (the "Commonwealth") (Petition, APP-044).

The Oversight Board subsequently commenced additional title III cases under PROMESA for each of COFINA, the Employees Retirement System for the Commonwealth of Puerto Rico, and the Puerto Rico Highways and Transportation Authority (collectively, with the Commonwealth, the "Debtors"). By order dated June 29, 2017, the District Court approved the joint administration of the Commonwealth Title III Case and the title III cases of the other Debtors (Joint Administration, APP-063, together, the "Jointly Administered Cases").

On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a Notice Appointing Creditors Committee for Unsecured Creditors. (Committee Appointment, APP-060).

## II. THIS ADVERSARY PROCEEDING WAS FILED WITHIN COMMONWEALTH'S TITLE III CASE

This appeal originates from an adversary proceeding within the Commonwealth Title III Case (the "Adversary Proceeding") that was filed by Assured Guaranty Corp., ("AGC"), Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("AGM" and, together with AGC, "Assured"), and National Public Finance Guarantee Corporation ("National" and together with Assured, the "Plaintiffs-Appellees"). The Plaintiffs-Appellees insure certain bond debt of the Commonwealth.

Through their *forty-five page* Complaint, dated May 11, 2017, to initiate the Adversary Proceeding, Plaintiffs-Appellees seek, *among other things*:
i) declaratory relief on challenges to the legality of the Fiscal Plan for the Commonwealth dated March 13, 2017 (as amended, the "Fiscal Plan") and the Fiscal Plan Compliance Law, P.R. Laws 26-2017, as implemented through related legislation, as violating various provisions of PROMESA and the Contracts Clause, the Takings Clause, and the Due Process Clause of the Constitution of the United States; ii) injunctive relief enjoining Defendants-Appellees from proceeding with the confirmation of any adjustment plan based on the Fiscal Plan;

and iii) a stay of any confirmation of any plan of adjustment in the title III cases until the development of a fiscal plan that is allegedly compliant with PROMESA and the United States Constitution. (Complaint, APP-184).

The issues raised within the Adversary Proceeding are crucial for the *entire* Commonwealth Title III case (as well as all Jointly Administered Cases), capable of cascading through the entire structure of the Commonwealth Title III Case and plan of adjustment to gravely impact the Commonwealth's unsecured creditors (who are the Committee' constituents). These include, for example, whether certain liens exist and their recognition and significance under the Bankruptcy Code, whether Plaintiffs-Appellees have Constitutionally-protected property interests in Puerto Rico's resources, and whether the Fiscal Plan or related legislation effected a taking or ran afoul of the Contracts clause.

The Adversary Proceeding also purports to resolve a **$6.2 billion dollar question** through its challenge to the propriety of Puerto Rico's so-called "contingency reserve" over the next 10 years to pay for non-budgeted expenses. Whether this reserve results in an understatement of Puerto Rico's capacity to service its debt obligations is an issue raised in the Adversary Proceeding, and it would necessarily and directly impact the pool of resources available to pay the Debtors' unsecured creditors under any plan of adjustment. It is, therefore, a quintessential issue on which the Committee *must* be heard.

## III. COMMITTEE'S MOTION TO INTERVENE AND OVERSIGHT BOARD'S CONSENT TO LIMITED PARTICIPATION

Approximately a month after its appointment by the U.S. Trustee, the Committee submitted its Motion,[4] requesting certain rights and roles originating from section 1109(b)'s textual guarantee that "a creditors' committee . . . may raise and may appear and be heard on any issue . . . ." (Motion, APP-231). Plaintiffs-Appellees opposed the Motion entirely, arguing the Committee should have no involvement in the Adversary Proceeding. (Opposition to Motion, APP-250). The Oversight Board, however, conceded in its "Limited Opposition"

> **the Committee should be allowed** to review discovery (subject to appropriate confidentiality agreements), and file briefs in this adversary proceeding stating its positions (*i.e.* **to raise, appear and be heard**), but it should not be allowed to participate in discovery, at trial or in settlement discussions, or commence an appeal.

(Limited Opposition, APP-270 at 9) (emphasis added). By the date of the Committee's reply, the Oversight Board, the Commonwealth, and the Committee had reached an agreed resolution on the "Limited Participation" to be afforded the Committee, as memorialized in a proposed order to which the Oversight Board consented. (Reply, APP-286 at 6; *Id.* APP-306). As detailed below, this proposed order, which was attached to the Committee's reply, would have allowed the

---

[4] The Committee filed its Motion so as to be heard at the first omnibus hearing in the Commonwealth Title III Case after the Committee's appointment.

Committee limited rights to receive discovery and be heard through briefing and argument, but not to initiate discovery or to control or settle claims in any way.[5]

Nonetheless, the District Court denied the Motion *outright*. It did not permit the Committee to participate through permissive intervention under section 1109(b) or otherwise. It further concluded section 1109(b) does not suffice for intervention as a matter of right according to purported *stare decisis* of the First Circuit, when there is, in actuality, no such binding precedent. And, having rejected intervention as the *sine qua non* of the Committee's having *any role* in the Adversary Proceeding, the District Court ruled (relying on a nonexistent precedent of the First Circuit) the Committee was **"foreclosed"** and **"not entitled to participate"** in the Adversary Proceeding—"in *even the limited . . . fashion* it has proposed" and irrespective of its important official and statutory capacity. (Intervention Order, APP-310 at 2-3).

This appeal ensued, with the Committee seeking to vindicate its rights under section 1109(b) by obtaining limited participation (that is, to raise, appear, and be heard on issues) in the Adversary Proceeding as Congress intended.

[5] The Committee remains committed to the agreement on its Limited Participation reached with the Oversight Board. As such, even if this court were to grant the Committee the full intervention rights to which it is entitled pursuant to section 1109(b), the Committee would seek no greater level of participation in the Adversary Proceeding than requested in the proposed Order to which the Oversight Board consented.

## SUMMARY OF ARGUMENT

Reversal of the District Court is required by giving effect to the plain language of section 1109(b) of the Bankruptcy Code, which provides that a party in interest—including, explicitly, an official creditors' committee—"may raise and may appear and be heard on any issue in a case. . . ." 11 U.S.C. § 1109(b). This codification of a statutory committee's right to participate in disputes amongst debtors and third parties reflects the unique reality of bankruptcy: outcomes of disputes within bankruptcy cases, however initiated by the movant or complainant, have a direct economic impact on unsecured creditors in bankruptcy because the debtor is typically insolvent and therefore unable to pay unsecured creditors in full. Moreover, official committees of unsecured creditors must be able to evaluate the merits of the debtor's desired outcome, which may be at odds with the outcome that would maximize value for unsecured creditors. In all contexts, the Committee must be heard—as a matter of procedural practicality, Congressional mandate, and Constitutional due process and fair play.

This Appeal seeks vindication of the Committee's rights under Section 1109(b) to have minimal "Limited Participation"—only to review discovery and observe depositions, submit briefing, and participate in arguments—in a specific adversary proceeding, within which Plaintiffs-Appellees have attempted to block a plan of adjustment in the Commonwealth Title III Case. The Adversary

Proceeding is postured to resolve the legality of the Commonwealth's fiscal plan and Constitutional questions regarding its implications. The gravity of the issues within the Adversary Proceeding cannot be overstated, as a determination on these issues adverse to the Committee's interests could very well derail the Fiscal Plan and result in its modification or an injunction to halt confirmation of a plan of adjustment for the Commonwealth. Such issues and their consequences are far-reaching and fundamental to the Commonwealth's Title III Case as a whole. Despite the Committee's statutory duties and unique role in the Commonwealth's Title III Case, under the Intervention Order the Committee is indefinitely shut-out of *any participation* in the Adversary Proceeding and will have no say on the critical issues to be decided by it.

The Intervention Order was wrong for numerous reasons, and the District Court's reasoning underlying it is both implausible and irreconcilable with the logic of prior courts to address this issue. First, it contravenes the plain meaning of section 1109(b), which, as incorporated by PROMESA, grants every party in interest the right to raise and be heard on *any* issue in the case. The Oversight Board's petition commenced a *case;* innumerable issues have arisen and will continue to arise while that case is pending. Those issues arise in either adversary proceedings or contested matters brought by parties within the *"case,"* just as Section 1109(b) confers the Committee with right to raise and be heard on "any

issue *in a case*." The District Court purported to assume without deciding that the Adversary Proceeding is *within* the Commonwealth Title III Case (seemingly in hopes of avoiding a split of authority), but it is precisely this conclusion that should have resulted in at least the Committee's Limited Participation through the grant of the Motion.

Second, the Intervention Order runs afoul of the Rules Enabling Act, 28 U.S.C. §§ 2072, 2075, which bars the Federal Rules and Bankruptcy Rules from abridging any substantive or procedural right under the Bankruptcy Code, including the absolute right to appear and be heard on "any issue" under section 1109(b). Simply put, disputes within a bankruptcy case may be brought in one of two ways: i) contested matters governed by Bankruptcy Rule 9014, which are commenced by motion; and ii) adversary proceedings governed by Bankruptcy Rules 7001 through 7087, which must be commenced by complaints under Bankruptcy Rule 7003. The effect of the Intervention Order is to treat adversary proceedings differently from contested matters, requiring the Committee to intervene by satisfying Bankruptcy Rule 7024 in adversary proceedings to have any voice, when no such additional *procedure* is necessary for the Committee to enjoy the same rights with respect to every contested matter.

The fallacy of the District Court's reasoning is that it creates an endless and illogical loop: for the Committee to enjoy its *statutory* right within the Adversary

Proceeding pursuant to section 1109(b), it must hurdle the additional requirements of formal intervention under *procedural* Bankruptcy Rule 7024, but it cannot utilize section 1109(b) to satisfy Bankruptcy Rule 7024's standard for intervention as a matter of right on the basis of a federal statute. Effectively, it renders section 1109(b) superfluous. The initial underpinning of this flawed logic—section 1109(b) applies to contested matters generally, but adversary proceedings *only if* an official committee can satisfy Bankruptcy Rule 7024 on *some other grounds* unaided by and independent of section 1109(b)—violates the Rules Enabling Act. Section 1109(b) is a statute of the United States which confers an unconditional right to intervene in any issue in a case, and thus on its face satisfies the requirements of Federal Rule 24(a)(1). The District Court's contrary reasoning means that section 1109(b) has no application whatsoever to adversary proceedings, the antithesis of the plain meaning of unambiguous statutory text that usurps the cardinal principle that *rules* of procedure must yield to Congressional *statutes*.

Third, the arbitrary limitation of a party's rights under section 1109(b) to contested matters is contradicted by the Bankruptcy Rules and common sense. Bankruptcy Rule 7001 lists the issues to be litigated in adversary proceedings, and this rule provides a proceeding to obtain an injunction or to subordinate a claim is an adversary proceeding if raised separately from a hearing on a plan, but is not an

adversary proceeding if raised in a plan. Patently, it makes no sense that Congress wanted the rights of an official committee to appear on issues of injunction or subordination (or any other of innumerable issues that may creatively be presented as either adversary proceedings or contested matters) to depend on the timing or choice of pleading. Indeed, the instant appeal also involves an issue in which Appellee's choice of pleading would control Appellant's right to be heard on that issue under section 1109(b). The Adversary Proceeding itself is a preemptive objection to the Commonwealth's plan of adjustment, which, more appropriately, should be addressed instead as a contested matter under Bankruptcy Rule 3020(b)(i).

Finally, the District Court also erred by refusing to allow permissive intervention under Federal Rule 24(b), and its justification for the decision amounts to plain legal error. The District Court's finding of an absence of common issues is contradicted by written submissions and Plaintiffs-Appellees boilerplate allegations of undue prejudice should have been rejected, particularly because Limited Participation affords no ability to derail the Adversary Proceeding, as it is in its early stages and the Committee's involvement is expressly authorized by Congress through section 1109(b).

This Court must first decide whether, pursuant to section 1109(b) an *official* committee of unsecured creditors must be able to argue and brief issues in any

aspect of chapter 11 or Title III case. To ask the question is to answer it affirmatively, meaning that only the procedural mechanics of how to effectuate that statutory goal should remain.

## ARGUMENT

### I. DISTRICT COURT'S ERRONEOUS RULING DEPRIVES COMMITTEE OF ESSENTIAL STATUTORY RIGHT UNDER SECTION 1109(B) AND INHIBITS FULFILLMENT OF ITS BROADER DUTIES & RESPONSIBILITIES UNDER THE BANKRUPTCY CODE

Official creditors' committees play a "pivotal role in the bankruptcy process[,]" given Congress granted them broad powers and charged them with broad duties to their constituents, *e.g.*, "to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected." *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) (unpublished) (citation and quotation omitted); *see, e.g.*, 11 U.S.C. § 1103(c) (enumerating official committee powers/duties). Bound by statutory fiduciary duty, the Committee must represent and protect the pecuniary and legal interests of the general unsecured creditors of the Commonwealth—the "necessarily *different* interests and concerns of the creditors it represents." *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981) (unpublished). "[T]here is simply no other entity established by the Code to guard those interests." *Id. at 43.*

Given the interrelated issues across the Jointly Administered Cases, the Committee must have at least minimal participation in the bankruptcy cases as a whole, including the various contested matters and adversary proceedings within them. Congress expressly intended that result by enacting section 1109(b), which states in part "**a creditors' committee . . . may raise and may appear and be heard on any issue in a case.**" *Id* (emphasis added). "Section 1109(b) is an important monitoring tool at the disposal of the creditors' committee . . . [, which] interests of efficiency and fair play underlie." *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1420 (3d Cir. 1994). The Intervention Order, which denied the Committee *any* form of intervention or even "Limited Participation" (defined below) in the Adversary Proceeding, rendered section 1109(b) inert. Yet, the Committee cannot serve its appointed role and discharge its fiduciary duties if it is forced to remain on the sidelines while issues of fundamental significance in the Jointly Administered Cases and affecting the Committee's constituents' interests are decided, by way of prime example, within the Adversary Proceeding. This restriction conflicts with basic considerations of due process, which dictate no person directly affected by a judicial proceeding should suffer the consequences of the proceeding without a meaningful opportunity to appear and be heard. *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445, 457 (3d Cir. 1982) ("the broad and absolute construction of section

1109(b) comports with the usual expectation of parties in interest that they will have the right to be heard”).

Consistent therewith, the Motion’s ultimate request for significantly “Limited Participation” in the Adversary Proceeding sought only the rights most fundamental to effectuating section 1109(b). Whether, for purposes of procedure, considered a form of intervention or otherwise, the Committee’s Reply in Support of its Motion memorialized the final form of the rights and roles it sought from the court, in the form of “Limited Participation.” (Reply, APP-286 at 6). That is, the Committee “agree[d] to the scope—and limits” proposed by the Oversight Board in its limited opposition to the Motion, and “to which the *Oversight Board ha[d] consented*, providing that intervention would afford the committee *only the right to raise, appear, and be heard* on issues in the [Adversary Proceeding].” *Id.* (emphasis added). Under this consensual arrangement delimiting the contours of what the Committee would be permitted to do (and would not be allowed to do), “Limited Participation” encompassed exclusively:

i) The right to attend depositions, with no opportunity to examine any witness at deposition or otherwise;

ii) Access to all prior discovery taken to date and service of future productions in discovery, with no right to propound discovery of the Committee’s own; and

iii) The ability to file briefs stating the Committee's position(s) and opportunity to be heard at arguments.

(*Id.*, APP-306 at 3).

As the Committee emphasized at oral argument on the Motion, the Limited Participation sought was curtailed from intervention equivalent to having *ownership* of the claim or tantamount to being a party to a case. (20170809 Omnibus Hrg. Tr., APP-313 at 172:8-9, 15-16 (explaining Committee was "not seeking full . . . party intervention," but rather "very limited intervention")). The proposed Limited Participation by the Committee was carefully tailored to the bounds of section 1109(b), and excluded any ability of the Committee: i) to participate fully in discovery, including propounding discovery requests and examining witnesses; ii) to participate fully at depositions and hearings; or iii) to control or settle causes of action. *Compare* (Reply, APP-286 at 6) (delimiting the specific rights detailed above as comprising Limited Participation), *with* (Motion, APP-231 at 8) (broader rights and roles initially sought within Motion, largely absent from Limited Participation).

The Intervention Order is not an anomalous ruling in the Commonwealth Title III Case, but rather the latest implementation of a judicial derogation and nullification of section 1109(b) throughout it. In pre-Title III PROMESA litigation (preceding section 1109(b)'s applicability), *three* motions to intervene filed by

insurers and bondholders were granted, the latter *paralleling the Committee's representative interests of creditors*. *See Lex Claims, LLC v. Garcia-Padilla*, No. 16-2374 (FAB), 2017 U.S. Dist. LEXIS 23248 (D. P.R. Feb. 17, 2017) (unpublished) ("[A]ll pending motions to intervene . . . place no undue prejudice on the existing parties"; "Even if . . . not entitled to intervene as of right . . . the Court would nonetheless permit [permissive intervention]."). In stark contrast, Judge Swain (presiding over the Commonwealth Title III Case) has denied every single motion to intervene known to the Committee in myriad adversary proceedings.[6] The issues presented on appeal, then, are not only of a grave magnitude for the Committee as to this specific, Adversary Proceeding, but also raise error likely to be continuously replicated as other adversary proceedings and contested matters arise within the Jointly Administered Cases.[7]

---

[6] *See* (Intervention Order, APP-310); *Peaje Investments LLC, v. Puerto Rico Highways & Transportation Authority (In re Commonwealth of Puerto Rico)*, Adv. Proc. No. 17-00151 (LTS), (D. P.R. July 21, 2017) (APP-361); *Peaje Investments LLC, v. Puerto Rico Highways & Transportation Authority (In re Commonwealth of Puerto Rico)*, Adv. Proc. No. 17-00151 (LTS), (D. P.R. Aug. 10, 2017) (APP-371); *Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corp. (In re Commonwealth of Puerto Rico)*, Adv. Proc. No. 17-00133 (LTS), (D. P.R. Aug. 1, 2017) (APP-388); (*Id.*, APP-385); (*Id.*, APP-374).

[7] The Committee subsequently filed Notices of Appeal of the identical question emanating from other adversary proceedings. Twenty-five adversary proceedings are pending in the Title III cases at this time.

## II. LINCHPIN OF DISTRICT COURT'S REASONING, *IN RE THOMPSON*, IS DECADES-OLD AND ONLY COMMENTS ON INTERVENTION THROUGH DICTA IN PASSING EXAMPLE

Combining the reasoning announced at the Omnibus Hearing with its written Intervention Order, the District Court relied entirely on a misreading of the First Circuit's decision of *In Re Thompson,* 965 F.2d 1136, 1141 (1st. Cir. 1992). At oral argument, the District Court stated it regarded *In Re Thompson* as "the First Circuit [having] *held quite clearly* that non-party participation in an adversary [proceeding] is dependent on Rule 24 intervention." (20170809 Omnibus Hrg. Tr., APP-313 at 175:19-22) (emphasis added). The Intervention Order echoed this central premise, reciting: "the right to appear and be heard is not a statutory right to intervene, as the Court of Appeals for the First Circuit observed in *In re Thompson*" and "*In re Thompson . . . holds* that 'nonparty participation in an adversary proceeding is dependent on intervention." (Intervention Order, APP-310 at 2-3) (emphasis added). Basically, the Intervention Order stands for the circular premise that a party in interest (*i.e.*, the Committee) can only be heard in an adversary proceeding pursuant to section 1109(b) through intervention, but if it does not meet Rule 24's separate intervenor requirements, it cannot be heard at all—Rule 24 then nullifies section 1109(b).

The keystone of the District Court's decisional analysis collapses, however, because *In re Thompson* does not stand for the cited proposition; it did not address

the rights granted by Congress through section 1109(b) because ***In re Thompson* was a chapter 7 case and section 1109, which appears in chapter 11 of the Bankruptcy Code, is inapplicable to cases under chapter 7**. Nor did it decide (let alone create controlling authority on) the issues of intervention presented on this appeal. The District Court was apparently led astray by the argument Plaintiffs-Appellees are apt to repeat on appeal: the **emphatically false premise** that "the First Circuit's position on this issue [was] *clearly stated* in *In re Thompson,"* and "meeting the party in interest standard under section 1109 *does not* confer an unconditional right to intervene in an adversary proceeding." (Opposition to Motion, APP-250 at 7, 11) (emphasis added).

*In re Thompson* is exclusively a decision about **standing in bankruptcy appeals**, with every mention of intervention contextualized thereby. The First Circuit's holding was to "dismiss the[] appeal for lack of standing," *In re Thompson*, 965 F.2d at 1138, a foundational underpinning that preempted the development of any other holding in the case: "we need address *only* their 'standing' to appeal the order." *Id.* at 1138, 1140 (emphasis added). Further distancing *In re Thompson* from the purported "holding" on which the Intervention Order relied, it determined whether a debtor and single unsecured creditor (and not any *official committee*) "possess *standing to appeal*" a bankruptcy court order authorizing settlement of an adversary proceeding (an automatic right the

Committee did not seek within the Limited Participation requested in the Adversary Proceeding). *Id.* at 1138 (emphasis added).

Far from establishing broad-sweeping prohibitions that eviscerate statutory directives of Congress (as Plaintiffs-Appellee overstated before the District Court), *In re Thompson*'s "appellants were *neither* original nor *intervening parties.*" *Id.* at 1138. It is this critical procedural fact on which the First Circuit's actual, if not singular holding, hinges: "mere participation . . . in an adversary proceeding does not constitute *de facto* intervention" conferring standing to appeal a bankruptcy order, nor may a "putative intervenor" who "had the right to intervene, but had not formally done so" rely on this *potential* involvement as axiomatically satisfying standing to appeal. *Id.* at 1141-42. Intervention, then, was only one legal vehicle the First Circuit employed in explaining the disconnect between various forms of participation afforded through the Bankruptcy Code and the *capacity*, as a prudential matter of standing, to pursue an appeal of a bankruptcy order.

Section 1109(b) was never invoked by any party to *In re Thompson*, nor was its interrelationship with Bankruptcy Rule 7024 or Federal Rule 24 dispositive of any issue within that appeal. Almost the entirety of the District Court's reliance on *In re Thompson* (misguided by Plaintiffs-Appellee's briefing below), emanates from statements relegated to one footnote ("Footnote Eight"). The introductory sentence of Footnote Eight crystallizes what follows as a passing example of *other*

decisions seemingly supportive of the premise that status as a "party in interest" does not equate to standing in a bankruptcy appeal. Footnote Eight opens with "Similar limitations on participation by 'parties in interest' are *recognized elsewhere* under the Code," so, far from *deciding* any issue in the First Circuit, this Circuit has only cited and summarized the conclusions of courts *"elsewhere," i.e.,* in *other* Circuits. *In re Thompson*, 965 F.2d at 1142 n.8. The total absence of any First Circuit "holding" as to section 1109(b), or its particularized application to intervention, is evident from the citation to and explanation of diverging authority within Footnote Eight. *Id.* Plaintiffs-Appellees and, derivatively, the District Court have harped on *In re Thompson's* citation to the Fifth Circuit's stance announced in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286-87 (5th Cir. 1985). Equally notable, however, is Footnote Eight's reference, prefaced by a "But cf." signal of contradiction, to a Southern District of New York decision (a precursor to *In re Caldor*, the Second Circuit's seminal case on this subject, by nearly a decade) as

> rejecting Fuel Oil analysis, and finding congressional intent to confer absolute statutory right of intervention by enactment of section 1109(b).

*In re Thompson*, 965 F.2d at 1142 n.8.

The actual "holding" of *In re Thompson*, then, does not—and cannot as a matter of judicial prudence—extend to section 1109(b) or its relationship with Rule

24, but is, rather, "mere dicta." *United States v. Gonzalez*, 311 F.3d 440 (1st Cir. 2002) (holding "statelessness" of a vessel was appealable issue, rejecting prior First Circuit decision "opin[ing] that statelessness should *not* be appealable" precisely because "[t]hese comments are mere dicta, as our decision was *based on other grounds*") (emphasis added).

Finally, the centerpoint of the sound bite from Footnote Eight on which the District Court relies is the Fifth Circuit's decision in *Fuel Oil*, 762 F.2d 1283, a more than *thirty-year-old* decision whose reasoning is the antithesis of the logical approach outlined in Part III, *infra*, which has been critiqued for its erroneous underpinnings, most notably by the Second Circuit through *In re Caldor*, 303 F.3d 161.

## III. DISTRICT COURT ERRED IN CONCLUDING, CONTRARY TO REASONED AND RECENT APPROACHES OF OTHER CIRCUITS, THAT SECTION 1109(B) DOES NOT ENABLE COMMITTEE'S INTERVENTION IN ADVERSARY PROCEEDING AS MATTER OF RIGHT

The Commonwealth's Title III Case, commenced under PROMESA, is substantively and procedurally a bankruptcy case. In addition to the Bankruptcy Rules, Congress also made dozens of Bankruptcy Code sections "apply in a case under . . . [T]itle [III] . . . ." of PROMESA, including the Bankruptcy Code section central to this appeal: "Section[] . . . 1109 . . . ." PROMESA §§ 301(a), 310.

By its express terms, section 1109(b) independently grants the Committee the right to participate *in the Adversary Proceeding.* And the terms of section 1109(b) could not be more clear – a party in interest has the right to raise and to appear and be heard "on any issue in a case under this chapter." There is no dispute as to the Committee being a "party in interest"; it is featured in the list of qualifying parties within the statutory text. Specifically, section 1109(b) provides

> [A] party in interest, including . . . ***a creditors' committee***, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may *appear and be heard* ***on any issue in a case*** *under this chapter*.

11 U.S.C. § 1109(b) (emphasis added).

Thus, the District Court should not have hesitated in granting the Committee's Motion, which sought carefully circumscribed rights to participate in the Adversary Proceeding tailored to the bounds of section 1109(b). Where the meaning of a statute is plain, a court's only function is to "enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235 (1989) (citing *Caminetti v. United States,* 242 U.S. 470 (1917)). However, the Intervention Order directly contravenes the express terms of section 1109(b) *and* the multiple Circuit Courts that have analyzed this issue. It effectively denies the Committee – specifically tasked with representing and protecting the pecuniary and legal interests of the general unsecured creditors of the Commonwealth – the right to do

*anything in* the Adversary Proceeding. The Committee cannot appear, much less be heard.

Prior judicial analysis of this issue, that is, whether a creditors' committee has the right, pursuant to section 1109(b), to intervene in an adversary proceeding, have focused on whether the statute's "case under this chapter" language encompasses adversary proceedings. The Circuit Courts have taken the unanimous view that a creditors' committee does, in fact, have the right to intervene in "the case." But, authorities diverge on whether the term "case" references the entire bankruptcy case encompassing both adversary proceedings raised under Part VII of the Bankruptcy Rules and contested matters raised under Bankruptcy Rule 9014. No Circuit Court answering this question in the affirmative has gone on to deny intervention.

### A. An Adversary Proceeding is "Within" Bankruptcy "Case" (Not Separate and Distinct From It), So Section 1109(b)'s Authorization to "Appear and Be Heard" on Any Issue *in the Case* Subsumes Adversary Proceeding

The District Court actually accepted the premise that the Adversary Proceeding "is indeed a case" (Intervention Order, APP-310 at p. 2), which, consistent with the courts that have looked at this issue, should have ended the inquiry with the grant of the Motion—particularly in light of the Limited Participation sought by the Committee in the Motion. But the District Court then went where no court of which the Committee is aware (and certainly no circuit

court considering this question) has gone before, ruling the Committee still is not allowed to be heard pursuant to section 1109(b). This is plain error.

A bankruptcy "case" is what is commenced by the filing of a petition for bankruptcy relief. It is, in colloquial terms, "the whole ball of wax." *In re Caldor*, 303 F.3d at 161 (citation and quotation omitted). A "proceeding," on the other hand, is any one of the myriad discrete judicial vehicles *within* a case, commenced by various forms of pleading.[8] The Advisory Committee Note to former Bankruptcy Rule 101 explained:

> [A] "bankruptcy case" . . . . embraces all the controversies determinable by the court of bankruptcy and all the matters of administration arising during the pendency of the case. . . . "[P]roceeding" as used in these rules generally refers to a litigated matter arising *within a case* . . . .

Bankruptcy Rule 101 advisory committee note.

Virtually every bankruptcy proceeding necessarily arises within the context of a bankruptcy case, and, conversely, it is only through discrete proceedings that the case is administered and issues may be raised and determined by the court. The Bankruptcy Rules divide the discrete proceedings occurring in a bankruptcy case into two categories—adversary proceedings governed by Bankruptcy Rules

---

[8] Adversary proceedings "have been correctly described as 'full blown federal lawsuits within the larger bankruptcy case. . . .'" Section 1120 (A)(1) Comm. *Unsecured Creditors v. Interfirst Bank Dallas, N.A.* (*In re Wood & Locker, Inc.*), 868 F.2d 139, 142 (5th Cir. 1989).

7001 through 7087, and contested matters governed by Bankruptcy Rule 9014. The basic difference is adversary proceedings must be commenced by complaints filed under Bankruptcy Rule 7003, while contested matters are commenced by motion under Bankruptcy Rule 9014. Other than this distinction, most of the same discovery and other rules apply equally in adversary proceedings and contested matters.

The filing of a petition for relief commences the bankruptcy case, and "[f]rom that beginning follow all the proceedings, whether called controversies, adversary proceedings, contested matters, suits, actions or disputes, that will occur as the case under the Bankruptcy code unfolds." *Collier on Bankruptcy* ¶ 3.01[3], at 3-13 (15th ed. rev. 2002). Therefore, because every issue in a case may be raised and adjudicated only in the context of a proceeding of some kind, it necessarily follows that reference in section 1109(b) to "any issue in a case" subsumes issues in a proceeding. Any other conclusion renders section 1109(b) meaningless because there is no such thing as an issue that arises exclusively in a "case" and not in any of the related proceedings within a case that are litigated as either contested matters or adversary proceedings.

B. Second and Third Circuits' Approaches Present Textually Superior and Policy-Appropriate Application of Section 1109(b), an Issue Remaining One of First Impression in First Circuit

Some courts, namely the Fifth Circuit in *Fuel Oil Supply*, have seized upon the general distinction between a "case" and a "proceeding" as support for the conclusion that Congress's express mention of the term "case" in section 1109(b) (but not "proceedings") means the section applies only to cases. Hence, these courts conclude, a party in interest's unqualified right to participate in a "case" does not extend to an unqualified right to participate with respect to any particular "proceeding" within the case. *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir. 1985). Significantly, the courts adopting this narrow view of section 1109(b) base their decision on grounds other than the plain text of section 1109(b), relying on the bankruptcy rules, advisory committee notes, legislative history, or policy concerns.

In contrast, the view adopted by other, better-reasoned courts, primarily in the Second and Third Circuits, is there is no meaningful distinction between a "case" and a "proceeding" for purposes of determining the scope of section 1109(b).[9] These courts explain Congress's failure to mention the term

[9] *See, e.g., Term Loan Holder Comm v. Ozer Group, LLC*, 303 F.3d 161, 168 (2d Cir. 2002)*; Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994) (creditors committee entitled to intervene in noncore adversary proceeding before federal district court under section 1109(b)); *Official Unsecured Creditors'*

"proceeding" in section 1109(b) does not limit its application with respect to any particular matter and the section applies with respect to every "issue" in a "case," regardless of the nature of the "proceeding" in which the issue arises and regardless of whether the proceeding is treated as a contested matter or adversary proceeding under the bankruptcy rules.

As discussed fully in Part II, *supra*, contrary to the District Court's Order, the First Circuit has not confronted nor decided the issue.

1. Relying on the Plain Meaning of Section 1109(b), Third Circuit in *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982), Determined Case Necessarily Includes Adversary Proceedings

The Third Circuit in *In re Marin*, also addressing a request to intervene by a creditors' committee, held a creditors' committee in a chapter 11 case had an absolute right to intervene in adversary proceedings pursuant to section 1109(b). The Third Circuit scrutinized the language of section 1109(b) and noted the

---

*Committee v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982) (creditors' committee has right to intervene in adversary proceeding instituted by trustee under section 1109(b)), *cert. denied*, 459 U.S. 1206 (1983); *Sarah R. Neuman Found., Inc. v. Garrity (In re Neuman)*, 124 B.R. 155 (Bankr. S.D.N.Y. 1991) (single largest creditor had absolute right to intervene in adversary proceeding under section 1109(b)); *Hanover Indus. Mach. Co. v. American Can Co. (In re Hanover Indus. Mach. Co.)*, 61 B.R. 551 (Bankr. E.D. Pa. 1986) (creditors' committee had absolute right to intervene in adversary proceeding); *D.H. Sharrer & Son, Inc. v. Sharrer Inv. Trust (In re D.H. Sharrer & Son, Inc.)*, 44 B.R. 976 (Bankr. M.D. Pa. 1984) (creditors' committee entitled to intervene in adversary proceeding over defendant's objection).

provision applied specifically to chapter 11 reorganizations, under which creditors' committees had extensive rights.[10] *Id.* at 449-50. The court explained the statute's express language, "on any issue in a case," included adversary proceedings, concluding it was "unlikely that Congress would have used such sweeping language if it had not meant 'case' to be a broadly inclusive term." *Id.* at 451.

The court also noted, although neither "case" nor "adversary proceeding" was defined in the Bankruptcy Code, Bankruptcy Rule 701 (then in effect) classified several proceedings as adversary proceedings, *Id.* at 450. The Third Circuit then declined to recognize any difference between the commencement of an adversary proceeding (by the filing of a complaint under the then existing Bankruptcy Rule 7003) and the commencement of a case (by the filing of a petition under 11 U.S.C. § 301). *Id.* at 450-51.

After analyzing section 1109(b)'s legislative history, the court also concluded the broad rights granted under section 206 of Chapter X of the Bankruptcy Act of 1938 and Chapter X Bankruptcy Rule 10-210(a) were carried forward to section 1109(b).[11] *Id.* at 451-52. The court emphasized section 1109(b)

---

[10] The court noted "failure to recognize that Congress intended a creditors' committee to have more extensive rights in a reorganization than in a liquidation" had caused much confusion. *In re Marin*, 689 F.2d at 450.

[11] The court noted Chapter X section 206 broadened the rights of creditors to participate in reorganization proceedings, thereby eliminating the restrictions that had been placed on creditors by section 206's predecessor statute, section 77B. *Id.*

was derived from a mandatory provision (Chapter X, section 206) rather than a permissive provision (Chapter X, section 207).[12] *Id*. at 452.

Finally, the court stated a broad interpretation of section 1109(b) advanced the principles of fairness: "[T]he broad and absolute construction of § 1109(b) comports with the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests." *Id*. The court further explained "[t]his expectation has its roots in notions of due process and fair play. . . ." *Id*. at 457. Rejecting the policy argument that an increase or delay in litigation would result from giving interested parties an absolute right of intervention under section 1109(b), the court noted an unqualified right of intervention had existed for nearly four decades without a flood of proceedings. *Id*. at 453.

---

(citing *In re Keystone Realty Holding Co.*, 117 F.2d 1003, 1005 (3d Cir. 1941)).

[12] The court stated the "lack of a counterpart to section 207 in the current [Bankruptcy] Code leads to an anomaly in the appellants' position" because appellants, in stating § 1109(b) applied only to cases, did not point out any statute which allowed intervention in adversary proceedings. *Id*. Thus, the court suggested that following this line of reasoning, the bankruptcy court could not have allowed intervention in adversary proceedings even if it desired to do so. *Id*. (Bankr. N.D. Iowa 1980) (Chapter X Bankruptcy Rule 10-210(b), allowing for permissive intervention, applicable to proceedings under chapter 11).

2. Disregarding Established Rules of Statutory Construction, Fifth Circuit Manufactured Its Desired Result in *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir. 1985)

The Fifth Circuit in *Fuel Oil* reached the opposite conclusion as *In re Marin,* finding no absolute statutory right of a creditors' committee to intervene in an adversary proceeding. To get there, however, the Fifth Circuit exalted bankruptcy rules, legislative history, and its own policy views over the plain meaning of the statutory text. The court first examined Federal Rule of Civil Procedure 24(a)(1) and stated, as a general rule, courts were reluctant to find unconditional statutory rights of intervention.[13] *Fuel Oil*, 762 F.2d at 1286 (citations omitted). *Fuel Oil* court erroneously proceeded to render the word "case" in section 1109(b) as equivalent to a contested matter in the Bankruptcy Rules and thus somehow different from adversary proceedings.

There is no statutory basis for making a bankruptcy "case" equivalent to contested matters rather than to the combination of all contested matters and adversary proceedings in the bankruptcy court administering the case. But, based on perceived distinctions between "case" and "proceedings" in Title 28 of the United States Code and the Bankruptcy Rules, the *Fuel Oil* court inexplicably

---

[13] The court reasoned, "[t]he statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federal regulatory commission; private parties are rarely given an unconditional statutory right to intervene." *Id*. (citation omitted).

concluded the term "case" in section 1109(b) did not encompass any "adversary proceeding." *Id*. at 1286-87. From this intermediate conclusion, it then determined section 1109(b) did not qualify as a statute conferring an absolute, unconditional right of intervention independent of Rule 24(a) requirements. *Id*. at 1287.

Next, the *Fuel Oil* court compared the committee's right of intervention in adversary proceedings with the right to initiate such actions. *Id*. The court reasoned because the right of initiation was not absolute, it followed that no absolute right of intervention existed. *Id*. Finally, the court suggested the intervention procedures of Federal Rule 24(a)(2) could provide adequate vindication of the broad rights to appear and be heard provided by section 1109(b)[14] (thereby rendering section 1109(b) a nullity, as the procedures of Federal Rule 24(a)(2) are always available to any party, whether or not within the scope of the specific protections afforded by section 1109(b) to "parties in interest").

The underpinning of the *Fuel Oil* decision was the court's concern that allowing the intervention rights section 1109(b) plainly provides would lead to a flood of parties' participation in litigation, which would unduly delay proceedings. This policy concern was echoed in *Richman v. First Woman's Bank*, 104 F.3d 654,

---

[14] *Id*. ("Our conclusion with respect to this legislative intent in no way restricts the broad, legitimate right to appear and be heard that § 1109(b) grants to parties in interest.").

659 (4th Cir. 1997),[15] where the court commented, with no independent analysis of section 1109(b)'s plain language, that it found the "logic of *Fuel Oil* persuasive."[16] Later critique of *Fuel Oil* by the Second Circuit, however, exposed *Fuel Oil*'s flawed analytical framework and intermediate conclusions, joining the Third Circuit in finding the rights requested in this Appeal are within the very text of section 1109(b).

3. In Well-reasoned Opinion Following Rules of Statutory Construction and Exposing Illegitimacy of Looking Beyond the Plain Meaning of Section 1109(b), Second Circuit in *Term Loan Holder Comm v. Ozer Group, LLC, (In re Caldor*) 303 F.3d 161, 168 (2d Cir. 2002) Held "Case" Necessarily Includes Adversary Proceedings

The Second Circuit's opinion of *In re Caldor* is the most recent and extensively reasoned of the circuit court decisions addressing this issue and was decided on analogous circumstances of a committee moving to intervene in an adversary proceeding. It holds any party in interest has an unconditional right to intervene in any adversary proceeding commenced during the course of the bankruptcy case.

---

[15] The actual crux of the decision was the determination that appellants lacked standing to appeal after having made no attempt to intervene.

[16] *Vermejo Park Corp. v. Kaiser Coul Corp.*, 998 F.2d 783 (10th Cir. 1993) has been characterized as following *In re Thompson* (and thus *Fuel Oil*) because it cited *In re Thompson* for the proposition that section 1109(b) does not result in intervention as a matter of right, but, importantly, the court declined to find appellants were, in fact, "parties in interest," which is a requirement for section 1109(b) to even be applicable.

The Second Circuit noted the language of section 1109(b) does not distinguish between cases and proceedings, but merely provides a party in interest has the right to be heard "on any *issue* in a case." *In re Caldor*, 303 F.3d 161 at 169. Observing that an "issue" is a "point in dispute between two or more parties," the Second Circuit concluded the "issues" referred to in section 1109(b) occur in proceedings, which themselves occur in and constitute part of the "case." *Id.* It reasoned, while the bankruptcy rules distinguish between different types of litigated matters arising during a bankruptcy case and divide them into "contested matters" and "adversary proceedings," the plain text of section 1109(b) "does not distinguish between issues that occur in these different types of proceedings within a Chapter 11 case." The phrase "any issue in a case," therefore, plainly grants a right to raise, appear and be heard on an issue regardless of whether it arises in a contested matter or an adversary proceeding.

According to the court, "case" is a "well-understood" term, referring to the "umbrella" under which all of the proceedings flowing from a bankruptcy filing take place. Also compelling was the statutory text's broader reference to the issues *"in"* a case—not the case alone:

> It is important to recognize, as the Third Circuit did, that the "exact language" of § 1109(b) "grants a right to appear and be heard not in 'a case' but 'on any issue in a case.'" . . . The "issues" referred to in § 1109(b) occur in proceedings, which themselves occur in and constitute part of the "case." While the bankruptcy rules

> "distinguish . . . between different types of litigated matters and divide them into contested matters and adversary proceedings," . . . the plain text of § 1109(b) does not distinguish between issues that occur in these different types of proceedings within a Chapter 11 case . . . . We hold, therefore, that the phrase "any issue in a case" plainly grants a right to raise, appear and be heard on any issue regardless whether it arises in a contested matter or an adversary proceeding.

*In re Caldor,* 303 F.3d 161 at 169 (citations omitted).

Based upon its conclusion that section 1109(b) is not in any way ambiguous, the Second Circuit rejected the argument that its interpretation of the statute was at odds with several procedural rules, advisory committee notes, legislative history and policy concerns. Those extrinsic sources need not be considered because section 1109(b) is clear on its face. *Id.* at 170. Moreover, it observed, even if extrinsic sources suggested a contrary interpretation, the law is clear the statute prevails if it conflicts with a procedural rule. *Id.* at 171.

Still, the court nevertheless explained its interpretation of section 1109(b) is not inconsistent with other statutes and procedural rules. For instance, addressing the contention that reading section 1109(b) to permit intervention in an adversary proceeding by a party in interest would render Bankruptcy Rule 7024 superfluous, the court remarked 7024 was directed toward potential intervenors who are not parties in interest, just as Bankruptcy Rule 2018 empowers the bankruptcy court to permit non-interested parties to participate generally in a bankruptcy case. *Id.* at

171-73. It found the advisory committee comment to Rule 2018 drawing a distinction between intervention in a case and proceeding to be "at best ambiguous," and in any event, not a "sufficient basis for determining that §1109(b) is exclusively limited to proceedings for which Rule 2018 is applicable." *Id.* at 172 n.9. It similarly found unpersuasive the contention Congress clearly distinguished between cases and proceedings in various statutory amendments enacted after the Bankruptcy Code was enacted in 1978, evidencing a "statutory scheme" to establish different rules governing participation in each. "These distinctions . . . do not demonstrate that Congress, in the different context of deciding parties' rights within the substantive bankruptcy law, intended the term "case" to exclude adversary proceedings." *Id.* at 175.

Finally, recognizing the Third Circuit had considered such policy concerns "unrealistic" in *Marin Motor Oil*, the court was unmoved by the policy-based argument predicated upon the potential for chaos in the bankruptcy courts created by opening the floodgates[17] to an unlimited number of potential intervenors in adversary proceedings. *Id.* at 175-76.

---

[17] Mark D. Sherrill, *To Knock First Or Barge Right In: Is A Chapter 11 Committee's Right To Intervene In Adversary Proceedings Absolute Or Permissive?*, 23 Emory Bankr. Dev. J. 451 (2007) (finding "inapposite" argument that "universal right of intervention for the committee . . . would lead to a flood of parties participating in litigation, which would unduly delay proceedings").

### C. This Court Should Adopt Well-Reasoned Holdings of Second and Third Circuits

Discussed fully in Part II, contrary to the reasoning announced by the District Court below at the Omnibus Hearing and in the written Intervention Order, the First Circuit has not considered or ruled on the issues raised in this Appeal, making them questions of first impression. The Second and Third Circuits got it right, as they relied on the plain meaning of section 1109(b) to find the phrase "any issue in a case" plainly grants a party in interest the unconditional right to "raise and appear and be heard" regardless of whether it originates in a contested matter or adversary proceeding. The Fifth Circuit on the other hand, in *Fuel Oil*, despite conceding the clarity of 1109(b)'s mandate—"based on the Bankruptcy Code alone, therefore, the argument that § 1109(b) creates an absolute right to intervene in an adversary proceeding appears strong"[18]—looked beyond the statute to procedural rules, legislative history and policy concerns to manufacture a different result.[19] By doing so, the Fifth Circuit ignored a fundamental rule: the question of statutory interpretation "begins with the language of the statute itself, and that is also where the inquiry should end" where, as is here, "the statute's language is

[18] *Fuel Oil*, 762 F.2d at 1285.
[19] The Second Circuit exhaustively addressed each of the subordinate authorities, including various rules and advisory committee notes, "find[ing] no tension" between them and the application of section 1109(b) as granting an "unconditional right to intervene." *In re Caldor*, 303 F.3d 161 at 171, 176.

plain." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (citation and quotation omitted) ("The plain text of the Bankruptcy Code begins and ends our analysis."); *see also In Re Caldor*, 303 F.3d 161 at 170-71 (noting section 1109(b) is a "clear Code provision" and not ambiguous).[20]

Finally, *Fuel Oil*'s policy concerns of opening floodgates or "chaos" were both debunked and denounced as an irrelevant judicial consideration. *In Re Caldor*, 303 F.3d 161 at 175-76 ("After living with the Marin decision for over a decade, the Third Circuit continued to find that policy concerns favored an unconditional right to intervene."). Acknowledging "[w]e must enforce what Congress has commanded whether or not we agree with its policy choices") *Id.* (citation and quotation omitted), the Second Circuit Court explained:

> We need not choose among the competing policy rationales for and against an unconditional right, because we do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce and **unless it leads to absurd or futile results, we must enforce what Congress has commanded** whether or not we agree with its policy choices.

[20] Notably, even if there were some ambiguity in the level of participation allowed, the Committee's proposal of Limited Participation incorporates the most elementary, basic rights that must be afforded by 1109(b) if section 1109(b) is to mean anything at all, so any dispute about scope should not alter the result allowing the Committee to "be heard" on some level.

*In re Caldor*, 303 F.3d 161 at 176 (internal quotation and citation omitted) (emphasis added).

There is nothing absurd about allowing the Committee to participate meaningfully in the Adversary Proceeding in the limited fashion requested by the Motion. As noted in *Collier on Bankruptcy*, the leading authority on bankruptcy, "[b]ecause every issue in a case may be raised and adjudicated only in the context of a proceeding of some kind, it is apparent that reference in section 1109(b) to 'any issue in a case' subsumes issues in a proceeding. Any other conclusion would render section 1109(b) meaningless because there is no such thing as an issue that arises exclusively in a 'case' and not in a proceeding." *Collier on Bankruptcy* ¶ 1109.04[1][a][ii] (16th ed. rev. 2017). Indeed, "[s]ection 1109(b) . . . evinces Congress's intent for creditors' committees to play a vibrant and central role in . . . adversarial proceedings." *Official Comm. Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 562 (3d Cir. 2003). Accordingly, the District Court should have granted Appellant leave to appear and be heard in the limited fashion requested by the Motion.

D. <u>Surely, Congress Did Not Intend Party in Interest's Right to Be Heard to Hinge on Whim of Framer of Pleadings (*i.e.*, Litigating by Adversary Proceeding or Motion.)</u>

Section 1109(b) supplies no textual mechanism for restricting its application on the basis of the type of proceeding in question, or the nature of the particular

issue to be resolved. On the contrary, the text of section 1109(b) and its legislative history only support the conclusion that the section applies to every issue in every proceeding in the case, however raised. This makes sense. It would defy logic for Congress to give statutory committees intervention rights if a party initiates the resolution of an issue by filing a motion *within the bankruptcy case*, but not if the party files a complaint to resolve the same issue by initiating an *adversary proceeding within the bankruptcy case*—thus putting the Committee at the mercy of the procedural vehicle chosen by the party commencing the proceeding.

In other words, restricting 1109(b) intervention to contested matters rather than encompassing adversary proceedings would only encourage procedural gamesmanship by litigants within the case. This court need look no further than this case for a compelling example of how this hyper-technical approach could lead to absurd results. *Compare APP-101 with APP-149*, (initiating, *by motion filed*, directly in the Commonwealth Title III case, constitutional challenge to PROMESA on basis of appointment of the Oversight Board purportedly violating Appointments Clause and separation of powers of the United States Constitution), *with Unión de Trabajadores de la Industria Eléctrica y Riego v. Puerto Rico Elec. Power Auth.* (*In re The Financial Oversight and Management Board for Puerto Rico*), No. 17-00228-LTS, (Utier Complaint, APP-333; Constitutional Challenge,

APP-359 (identical arguments presented within a *complaint* initiating an *adversary proceeding*)) (D.P.R. Aug. 6 and 16, 2017).[21]

Under *Fuel Oil*, the District Court's Opinion, and as illustrated in the prior paragraph, the Committee effectively could be heard in one procedural setting under the Commonwealth's Title III case but not another, even if issues are identical in both. Specifically, this Adversary Proceeding amounts to a preemptive objection to the Commonwealth's plan of adjustment. Bankruptcy Rule 3020(b)(i) provides an objection to a plan should be addressed as a contested matter governed by Bankruptcy Rule 9014, in which there would be no question as to the Committee's right to participate. The Committee's right to be heard cannot be dependent upon the happenstance of the procedural vehicles through which issues critical to the case—litigation over the framework for the Commonwealth's plan of adjustment within the Commonwealth Title III Case—are raised. Yet, that is where things stand if this court does not take action. Such procedural gamesmanship which would ensue if the District Court's opinion is allowed to stand, obviously, should not be encouraged.

[21] Critically, both seek dismissal of the entirety of the Title III cases and thus disbanding the Committee itself.

## IV. SECTION 1109(B)'S STATUTORY MANDATE DOES NOT REQUIRE ANY ADDITIONAL HURDLE OF FEDERAL RULE 24 BE MET FOR INTERVENTION, AND IS ALONE SUFFICIENT TO SATISFY FEDERAL RULE 24(A)(1)

In denying the Committee's Motion for very specific circumscribed participation in the Adversary Proceeding, the District Court took the erroneous position that any right the Committee has to intervene in the Adversary Proceeding pursuant to section 1109(b) is governed by "Federal Rule of Civil Procedure 24, made applicable in this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7024." (Intervention Order, APP-310 at p. 2) In other words, the District Court held the Committee's right to be heard in the Adversary Proceeding was dependent on satisfying Rule 24 requirements for intervention. This was error – error compounded by the fact that even if Rule 24 governs, Rule 24(a)(1) is satisfied by section 1109(b)'s statutory right of participation.

### A. Procedural Rules Cannot Abridge Section 1109(b)'s Absolute Substantive Right to Appear and Be Heard on "Any Issue"

Under the logic of the Intervention Order, a party's exercise of its 1109(b) rights would be contingent upon satisfaction of the requirements of Bankruptcy Rule 7024. This position ignores section 1109(b)'s direct grant to parties in interest of the right to be heard, and fails for multiple reasons.

As a threshold matter, Bankruptcy Rules cannot vary *any* section of the Bankruptcy Code, a critical tenet of statutory interpretation *Fuel Oil* disregarded in

"juxtapose[ing] [section 1109(b)] with . . . procedural rules," *762 F.2d* at 1286. This much is mandated by the Rules Enabling Act, 28 U.S.C. § 2075; *see also* 28 U.S.C. § 2072(b) ("Such rules [of civil procedure] shall not abridge, enlarge or modify any substantive right."). While Bankruptcy Rules are promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075, the Supreme Court's authority is limited. Congress mandated '[s]uch rules shall not abridge, enlarge, or modify any substantive right.' 28 U.S.C. § 2075. In this regard, many courts have construed Section 1109(b) as providing a substantive right to intervene. *See* Part II, *supra.* As such, Bankruptcy Rule 7024 is incapable of nullifying this substantive right. Alternatively, even if section 1109(b) is construed as a procedural provision, the Bankruptcy Rules do not limit its effect because rules promulgated pursuant to 28 U. S. C. § 2075 must be consistent with the applicable bankruptcy statutes. Bankruptcy Rule 1001 advisory committee note. Therefore, any argument that the promulgation of Rule 7024 modified the scope of section 1109(b) is rebutted by 28 U.S.C. § 2075 and Rule 1001. *See, e.g., In re Stoecker*, 179 F.3d 546, 552 (7th Cir. 1999) ("in a conflict between the Code and the rules, the Code controls"), *aff'd sub nom. Raleigh v. Illinois Dept. of Revenue*, 120 S. Ct. 1951 (2000); *United States v. Waindel (In re Waindel)*, 65 F.3d 1307 (5th Cir. 1995) (to extent Bankruptcy Rule 3002, which governs necessity for filing proof of claim, declares every untimely filed claim to be disallowed, it impermissibly conflicts with Bankruptcy Code);

*United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064 (9th Cir. 1994) (if IRS's claim is allowed under Bankruptcy Code, Bankruptcy Rule 3002(c) cannot "disallow" it.).

B. To Extent Federal Rule 24(a)(1) Does Govern Committee's Efforts to Be Heard on "Any Issue" in Adversary Proceeding, Committee Satisfies Its Requirements

In addition, any argument that reading section 1109(b) as granting a right of intervention in adversary proceedings renders Bankruptcy Rule 7024 a nullity fails. It *ignores* the fact that section 1109(b) only governs intervention by "parties in interest" (generally creditors and shareholders), while Bankruptcy Rule 7024 is far more broad. It governs intervention by *all* non-parties in interest, both as a matter of right and permissive, while simultaneously enforcing section 1109(b) and allowing intervention by parties in interest by providing: "anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene …" Section 1109(b) is such a statute.

As such, even if Bankruptcy Rule 7024 governs the Committee's right to participate in the Adversary Proceeding, there is no reason why Federal Rule 24(a)(1) does not grant the Committee the absolute right to do so since section 1109(b) grants the statutory right to appear and be heard on "any issue in the case."

Given the plain meaning of section 1109(b) and Fed, R. Civ. P. 24(a)(1), in conjunction with the entire jurisdictional and procedural scheme of the Bankruptcy

Code, the Judicial Code, and the Bankruptcy Rules, it is clear the Committee has the right to intervene in the Adversary Proceeding, particularly in the limited fashion sought by its Motion.

## V. PROCEDURAL ASPECTS OF INTERVENTION ASIDE, DISTRICT COURT COMPOUNDED ERROR BY DENYING COMMITTEE ANY MEANS OF PARTICIPATION IN ADVERSARY PROCEEDING WHATSOEVER, EVISCERATING SECTION 1109(B)

Section 1109(b) is a Congressional, statutory directive that "[a] party in interest," *i.e.*, the Committee, "may raise and may appear and be heard . . . ," *id.*, but the Intervention Order results in the Committee being entirely shut out of the Adversary Proceeding, having no greater rights nor role than the public to observe judicial proceedings. Surely, section 1109(b) must be applied as Congress' explicit statement that an official committee of creditors is entitled to, *at the very least,* something more.

### A. District Court's Dual Determinations That Intervention Is *Only* Means of Participation—But Section 1109(b) Provides No Pathway to Intervene—Renders Committee Entirely Shut-Out and Nullifies Section 1109(b)

Section 1109(b) must, at minimum, entitle the Committee to the "Limited Participation" in the Adversary Proceeding, which the Motion ultimately sought, as the rights and roles provided in Limited Participation would do no more than effectuate the Committee's statutory entitlement to "raise, appear, and be heard on any issue" *Id.* An express consequence of the District Court's wholesale denial of

the Motion, however, is the Committee being "foreclosed" from and "not entitled to participate in the adversary [proceeding], in *even the limited formal fashion* that it has proposed." (20170809 Omnibus Hrg. Tr., APP-313 at 176:1-3). Because no more *minimal*, yet meaningful, role than the Limited Participation proposed is conceivable, the Intervention Order precludes the Committee from having *any* role whatsoever—in direct contravention of section 1109(b) and disregarding that statute entirely together with the Committee's larger and unique purpose under the Bankruptcy Code.

The District Court's erroneous decision emanates from its conclusion that "nonparty participation in an adversary proceeding," ostensibly in *any* form, "is dependent on intervention" in its entirety, relying on dicta in outmoded and inapplicable First Circuit authority (as discussed in Part II, *supra*). The District Court's all-or-nothing approach—under which the Committee must satisfy the additional requisites of a *rule* governing intervention, *e.g.*, Bankruptcy Rule 7024 or Federal Rule 24, to enjoy its *statutory* right—is irreconcilable with section 1109(b)'s mandate that the Committee "may raise, appear, and be heard on any issue" and the hierarchy of authority whereby a statute enacted by Congress must prevail (yielding only to the United States Constitution). (See Part IV. A, *supra*, explaining no rule may alter statutory rights). Requiring the Committee to satisfy some *additional* standard for intervention (beyond Federal Rule 24(a)(1) as a

matter of statutory right)—particularly where it appears nowhere within section 1109(b) or any *Congressional* authority—is the antithesis of section 1109(b)'s mandate and effectively strips the Committee of any and all opportunity to be "heard," *much less* "appear" or "raise . . . any issue." *Id.*

The denial of permissive intervention rests on multiple errors of law, manifesting an abuse of discretion. Hermetically cutting off all avenues to obtain intervention by *rule*, however, the District Court also denied the Committee even *permissive* intervention under Federal Rule 24(b) for two contradictory reasons manifesting an abuse of discretion, each comprised of an error of law. First, the District Court concluded the Committee "ha[d] not identified with particularity any common question of law or fact that it shares with this [Adversary Proceeding]," yet still forecasted "permitting intervention by the [Committee] would unduly prejudice the existing parties by substantially expanding the scope of the litigation." (Intervention Order, 310 at 2-3). The first premise is belied by the text of the Motion, which stated:

> the unsecured creditors' pecuniary and legal interests are directly at stake in this [Adversary Proceeding, which] . . . . could have far-reaching effects on the basic structure of the Commonwealth's title III case and of a plan of adjustment in such case, and could have dramatic economic consequences for all Commonwealth general unsecured creditors,

and, derivatively, "could have an immediate and direct impact upon the availability of resources to the Commonwealth." (Intervention Order, APP-310 at 5-6, 12). The Motion did actually identify common "legal interests" and "pivotal issues that cut across the Jointly Administered Cases," including:

> (i) whether liens purportedly created by agreements authorized by a statute qualify as statutory liens under the Bankruptcy Code, (ii) whether Plaintiffs have alleged property interests protected under the Takings Clause, (iii) whether the Fiscal Plan and/or related legislation have effected a taking, and (iv) whether the Contract Clause applies to the Fiscal Plan and/or related legislation.

(*Id.* at 12-13). Moreover, the Committee far exceeded the requisites of Federal Rule 24(b) by explaining its anticipated contributions to the Adversary Proceeding on the above common legal and factual issues:

> the Committee will attempt to work cooperatively with the Oversight Board to ensure that the Fiscal Plan complies with the requirements of PROMESA, the Committee will forcefully advocate that the Fiscal Plan should be modified if the Committee concludes that corrections to such plan are required, whether based on the Debt Service Capacity Argument or otherwise.

(*Id.* at 11). Whether a common question of law or fact exists is itself a question of law—one erroneously decided by the District Court and amounting to an abuse of discretion.

It is unclear how the District Court, critical of a purported lack of particularity in common issues (dispelled above), could then conclude the

Committee's participation "would unduly prejudice the existing parties by *substantially expanding the scope of the litigation*," (Intevention Order, APP-310 at 2-3) (emphasis added). Rather, as noted above, the Committee's proposed involvement is virtually coextensive with the issues presently framed within the Adversary Proceeding. Under these circumstances at the virtual inception of the Adversary Proceeding, any foreseeable "extra work for those . . . who are not the intervenors' allies . . . *is a necessary evil.*" *In re Adelphia Communs., Corp.*, 285 B.R. 848, 856 (Bankr. S.D.N.Y. 2002) (unpublished) (emphasis added).

Plaintiffs-Appellees' nebulous complaint of "extra work" was virtually all of the prejudice the Plaintiffs-Appellees raised in opposing the Motion, and is itself inadequate as a matter of law. (Opposition to Motion, APP-250 at 15 (complaining, vaguely, "adding intervenors . . . would bog down this time-sensitive litigation")). *See Taylor, Bean & Whitaker Mortgage Corp. v. Sovereign Bank (In re Taylor, Bean & Whitaker Mortgage Corp.)*, No. 3:10-ap-0644-JAF, Doc. 33 (Bankr. M.D. Fla. Aug. 17, 2011) (unpublished) (rejecting "general claim of prejudice" from "additional expense of litigation" and allowing intervention of the Official Committee of Unsecured Creditors"). The District Court's adoption of this false premise is only another layer of legal error, as the prejudice inuring from the Committee's Limited Participation at the virtual infancy of the Adversary Proceeding is negligible, *if any at all*. *See Geiger v. Foley Hoag LLP*, 521 F.3d

60, 64-65 (1st Cir. 2008) (noting where "the case had not progressed beyond the initial stages when the motion was filed," "the balance of prejudices . . . weigh[s] heavily in favor of [the intervenors]"). So, too, is the District Court's reasoning of "undue prejudice" in a vacuum ignoring section 1109(b) entirely, subjugating Congressional intent with the District Court's policy judgments. *Bell v. Bell (In re Bell)*, 225 F.3d 203, 219 (2d Cir. 2000) ("[U]nless it leads to absurd or futile results, [the Court] must enforce what Congress has commanded whether or not we agree with its policy choices.") (citation and quotation omitted).

B. Rights and Roles Congress Conferred with Section 1109(b) Are Situation-Specific, But Must Mean Something, and Necessarily Include "Limited Intervention" Committee Sought

Congress did not specify the contours of the Committee's section 1109(b) statutory rights and roles with exactitude, leaving to the courts to determine appropriate boundaries in consideration of the totality of the circumstances and develop the procedural mechanics of how to establish and police them.

Following *In re Caldor* and section 1109(b)'s clear mandate that parties in interest, such as the Committee, have the right to "raise, appear and be heard," the general question of what those rights entail has been answered piecemeal. But the Limited Participation the Committee sought serves as a *floor*. In the months after the Second Circuit's finding that section 1109(b) is an "unconditional statutory right for parties in interest to intervene in adversary proceedings," 303 F.3d at 162-

63, the Southern District of New York observed in *In re Adelphia Communs. Corp.* "what happens *after* the intervention" remained an open question and "[t]he rights to participate in an adversary proceeding, like any other lawsuit, may be thought of as falling along a continuum"; **filing briefs and being heard in argument are on one end**; "ownership or control of the underlying causes of action at the other. . . ." 285 B.R. at 856. *In re Adelphia* found it "easy" to resolve the question of whether the intervenor under section 1109(b) (there, also the Official Committee of Unsecured Creditors) "must have" rights and roles synonymous with the Committee's requested form of Limited Participation, being:

> [i)] the right *to raise issues* and *appear and be heard* on matters in the adversary proceeding to the same extent as they do in the umbrella case . . .[; ii)] notice of proceedings (and the *service of papers* on them); [iii)] the right to *file their own* papers; [iv)] to *argue and respond* to arguments in court; and [v)] to *raise matters of concern* to them at case status conferences and, if necessary, *by motion*.

*Id.* at 856 (emphasis added); *c.f. Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC)*, 423 F.3d 166, 181 (2d Cir. 2005) (holding section 1109(b) "does not extend [so] far" as to allow intervening creditor to settle an adversary proceeding over debtor's objection).

Concluding a creditor's committee has an "unconditional right" to intervene does not end the analysis, nor would it release an onslaught of litigation and create undue burden because of the District Court's *continuing* ability to control the

Committee's conduct (and that of others statutorily entitled to invoke section 1109(b)). *See id.* at 851 ("[A]ny party in the litigation may later raise as an issue the propriety of any action taken or requested by the intervenor Committees.").

## CONCLUSION

The Intervention Order of the District Court should be reversed, with instruction on remand to grant the Committee the Limited Participation it sought within the Motion as effectuating its rights under section 1109(b), whether implemented through or independent of intervention pursuant to Bankruptcy Rule 7024 and/or Federal Rule 24.

*(Signature appears on following page)*

Dated: August 23, 2017

Respectfully Submitted,

By: /s/ William K Whitner
Luc. A. Despins, Esq.
James B. Worthington, Esq.
James T. Grogan III, Esq.
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

William K Whitner
(First Circuit Bar No.1180965)
Eric D. Stolze
(*admission pending*)
PAUL HASTINGS LLP
1170 Peachtree Street, NE.
Suite 100
Atlanta, GA 30309
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
kwhitner@paulhastings.com
ericstolze@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this document complies as follows:

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,681 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*(Signature appears on following page)*

Dated: August 23, 2017

Respectfully Submitted,

By: /s/ William K Whitner
Luc. A. Despins, Esq.
James B. Worthington, Esq.
James T. Grogan III, Esq.
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

William K Whitner
(First Circuit Bar No.1180965)
Eric D. Stolze
(*admission pending*)
PAUL HASTINGS LLP
1170 Peachtree Street, NE.
Suite 100
Atlanta, GA 30309
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
kwhitner@paulhastings.com
ericstolze@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

# CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing document with the Clerk of the United States Court of Appeals for the First Circuit via the CM/ECF system this 23rd day of August, 2017 which will automatically send notification to counsel listed below. In addition, paper copies have been mailed to each of the following:

Assured Guaranty Corp. and Assured Guaranty Municipal Corp

Heriberto Burgos Pérez
Ricardo F. Casellas-Sánchez
Diana Pérez-Seda
Casellas Alcover & Burgos P.S.C.
P.O. Box 364924
San Juan, PR 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401

Howard R. Hawkins, Jr.
Mark C. Ellenberg
Ellen Halstead
Thomas J. Curtin
Casey J. Servais
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 406-6666

National Public Finance Guaranty Corporation

Eric Pérez-Ochoa
Luis A. Oliver Fraticelli
Alexandra Casellas-Cabrera
Lourdes Arroyo-Portela
Adsuar Muñiz Goyco Seda & Pérez-Ochoa P.S.C.
P.O. Box 70294
San Juan, PR 00936-8294
Telephone: 787.756.9000
Facsimile: 787.756.9010

Jonathan Polkes
Marcia Goldstein
Salvatore A. Romanello
Gregory Silbert
Kelly DiBlasi
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, N.Y. 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

The Financial Oversight and Management Board for Puerto Rico, and The Financial Oversight and Management Board for Puerto Rico as representative for the Commonwealth of Puerto Rico

Hermann D. Bauer
Ubaldo M. Fernández
O'Neill & Borges LLC
250 Muñoz Rivera Avenue, Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

Martin J. Bienenstock
Stephen L. Ratner
Timothy W. Mungovan
Bradley R. Bobroff
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Michael A. Firestein
Lary Alan Rappaport
Proskauer Rose LLP
2049 Century Park East
32nd Floor
Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

The Puerto Rico Fiscal Agency and Financial Advisory Authority and Gerardo Portela Franco, in his capacity as Executive Director

Andrés W. López
The Law Offices of Andrés W. López, P.S.C.
902 Fernández Juncos Avenue
San Juan, PR 00907
Telephone: (787) 294-9508
Facsimile: (787) 294-9519

John J. Rapisardi
Suzzanne Uhland
O'Melveney & Myers LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Peter Friedman
O'Melveney & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Elizabeth Lemond McKeen
O'Melveney & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: (949) 823-7150
Facsimile: (949) 823-6994

Dated: August 23, 2017 Respectfully Submitted,

By: /s/ William K Whitner

Luc. A. Despins, Esq.
James B. Worthington, Esq.
James T. Grogan III, Esq.
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

William K Whitner
(First Circuit Bar No.1180965)
Eric D. Stolze
(*admission pending*)
PAUL HASTINGS LLP
1170 Peachtree Street, NE.
Suite 100
Atlanta, GA 30309
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
kwhitner@paulhastings.com
ericstolze@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

# ADDENDUM

# TABLE OF CONTENTS

**Description** **Pages**

ORDER DENYING MOTION TO INTERVENE ……………..................................ADD-1

PUERTO RICO OVERSIGHT, MANAGEMENT, …… ……..................................ADD-4
AND ECONOMIC STABILITY ACT (Sections 301, 306, 307, and 310)

FEDERAL RULES OF CIVIL PROCEDURE………………..................................ADD-13
RULE 24

FEDERAL RULES OF BANKRUPTCY…………………….................................ADD-18
PROCEDURE 7024

11 U.S.C. § 1102 ………………………………….........................................ADD-19

28 U.S.C. §1291……………………………………………...................................ADD-21

AUG, 9, 2017 OMNIBUS HEARING……………………..................................ADD-22
TRANSCRIPT EXCERPT

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | (Jointly Administered) |
| ASSURED GUARANTY CORP., et al.,<br><br>Plaintiffs,<br><br>-v- | Adv. Proc. No. 17-125-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Defendants. | |

---------------------------------------------------------x

MEMORANDUM OPINION AND ORDER DENYING MOTION TO INTERVENE

Before the Court is the *Motion of Official Committee of Unsecured Creditors for Leave to Intervene* in the above-captioned adversary proceeding. (Docket entry no. 37 (the "Motion").) The Court has considered carefully all of the submissions in connection with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Motion and the arguments presented at the August 9, 2017, Omnibus Hearing. For the reasons stated on the record at the Omnibus Hearing, and for the reasons that follow, the Motion is denied.

Federal Rule of Civil Procedure 24, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7024, governs intervention. The UCC asserts that it has a statutory right to intervene under Title 11, Section 1109(b), of the United States Code, which provides that a "party in interest," including a "creditor's committee," may "appear and be heard on any issue in a case under this chapter." Assuming without deciding that this adversary proceedings is indeed a "case" within the meaning of Section 1109(b), the right to appear and be heard is not a statutory right to intervene, as the Court of Appeals for the First Circuit observed in In re Thompson, writing that "11 U.S.C. § 1109(b), which provides that 'a party in interest, including the debtor, the trustee and a creditor, may raise and may appear and be heard on any issue in a case under chapter 11,' does not afford a right to intervene under Rule 24(a)(1), even though such 'parties in interest' enjoy the general right to 'monitor' the progress of the chapter 11 case." 965 F.2d 1136, at 1142 n.8 (1st Cir. 1992) (internal modifications omitted). The UCC therefore has not shown that it has a statutory right to intervene.[2]

The UCC has also not shown that it would be appropriate to grant permissive intervention pursuant to Rule 24(b), because the UCC has not identified with particularity any common question of law or fact that it shares with this adversary proceeding. Additionally, permitting intervention by the UCC would unduly prejudice the existing parties by substantially

---

[2] The UCC first argued that it had a right to intervene under Rule 24(a)(2) in its reply submission to the instant motion, which argument is procedurally improper and will therefore not be considered by the Court.

expanding the scope of the litigation. Accordingly, the Court declines to grant permissive intervention.

Finally, the UCC proposed, in its reply submission and at the Omnibus Hearing, a form of limited participation in the adversary proceeding, which would allow the UCC to appear and participate in certain aspects of the proceedings. This proposal is also foreclosed by the First Circuit's opinion in In re Thompson, which holds that "nonparty participation in an adversary proceeding is dependent on intervention." 965 F.2d at 1141. Thus, absent a proper basis to intervene under Rule 24, the UCC is not entitled to participate in the adversary proceeding in even the limited formal fashion it has proposed.

The Motion is therefore denied it its entirety. This Memorandum Opinion and Order resolves docket entry no. 37.

SO ORDERED.

Dated: August 10, 2017

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

CONGRESS.GOV

**H.R.5278 - PROMESA**

114th Congress (2015-2016)

**Sponsor:** Rep. Duffy, Sean P. [R-WI-7] (Introduced 05/18/2016)

**Committees:** House - Natural Resources; Judiciary; Education and the Workforce; Small Business | Senate - Energy and Natural Resources

**Committee Reports:** H. Rept. 114-602

**Latest Action:** 06/13/2016 Received in the Senate and Read twice and referred to the Committee on Energy and Natural Resources. (All Actions)

**Roll Call Votes:** There have been 2 roll call votes

**Notes:** For further action, see S.2328, which became Public Law 114-187 on 6/30/2016.

**Tracker:** Introduced **Passed House**

Summary (3) **Text (4)** Actions (53) Titles (7) Amendments (8) Cosponsors (2) Committees (5) Related Bills (3)

**Shown Here:**
Referred in Senate (06/13/2016)

114TH CONGRESS
2D SESSION

# H. R. 5278

IN THE SENATE OF THE UNITED STATES

JUNE 13, 2016

Received; read twice and referred to the Committee on Energy and Natural Resources

# AN ACT

To establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the “Puerto Rico Oversight, Management, and Economic Stability Act” or “PROMESA”.

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Effective date.

(1) an actuarial study of the pension liabilities and funding strategy that includes a forward looking projection of payments of at least 30 years of benefit payments and funding strategy to cover such payments;

(2) sources of funding to cover such payments;

(3) a review of the existing benefits and their sustainability; and

(4) a review of the system's legal structure and operational arrangements, and any other studies of the pension system the Oversight Board shall deem necessary.

(c) Supplementary Information.—In any case, the analysis conducted under subsection (a) shall include information regarding the fair market value and liabilities using an appropriate discount rate as determined by the Oversight Board.

**SEC. 212.** INTERVENTION IN LITIGATION.

(a) Intervention.—The Oversight Board may intervene in any litigation filed against the territorial government.

(b) Injunctive Relief.—

(1) IN GENERAL.—If the Oversight Board intervenes in a litigation under subsection (a), the Oversight Board may seek injunctive relief, including a stay of litigation.

(2) NO INDEPENDENT BASIS FOR RELIEF.—This section does not create an independent basis on which injunctive relief, including a stay of litigation, may be granted.

## TITLE III—ADJUSTMENTS OF DEBTS

**SEC. 301.** APPLICABILITY OF OTHER LAWS; DEFINITIONS.

(a) Sections Applicable To Cases Under This Title.—Sections 101 (except as otherwise provided in this section), 102, 104, 105, 106, 107, 108, 112, 333, 344, 347(b), 349, 350(b), 351, 361, 362, 364(c), 364(d), 364(e), 364(f), 365, 366, 501, 502, 503, 504, 506, 507(a)(2), 509, 510, 524(a)(1), 524(a)(2), 544, 545, 546, 547, 548, 549(a), 549(c), 549(d), 550, 551, 552, 553, 555, 556, 557, 559, 560, 561, 562, 902 (except as otherwise provided in this section), 922, 923, 924, 925, 926, 927, 928, 942, 944, 945, 946, 1102, 1103, 1109, 1111(b), 1122, 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b), 1123(d), 1124, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), 1127(d), 1128, 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b)(2)(A), 1129(b)(2)(B), 1142(b), 1143, 1144, 1145, and 1146(a) of title 11, United States Code, apply in a case under this title and section 930 of title 11, United States Code, applies in a case under this title;

however, section 930 shall not apply in any case during the first 120 days after the date on which such case is commenced under this title.

(b) MEANINGS OF TERMS.—A term used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), has the meaning given to the term for the purpose of the applicable section, unless the term is otherwise defined in this title.

(c) DEFINITIONS.—In this title:

(1) AFFILIATE.—The term "affiliate" means, in addition to the definition made applicable in a case under this title by subsection (a)—

(A) for a territory, any territorial instrumentality; and

(B) for a territorial instrumentality, the governing territory and any of the other territorial instrumentalities of the territory.

(2) DEBTOR.—The term "debtor" means the territory or covered territorial instrumentality concerning which a case under this title has been commenced.

(3) HOLDER OF A CLAIM OR INTEREST.—The term "holder of a claim or interest", when used in section 1126 of title 11, United States Code, made applicable in a case under this title by subsection (a)—

(A) shall exclude any Issuer or Authorized Instrumentality of the Territory Government Issuer (as defined under Title VI of this Act) or a corporation, trust or other legal entity that is controlled by the Issuer or an Authorized Territorial Instrumentality of the Territory Government Issuer, provided that the beneficiaries of such claims, to the extent they are not referenced in this subparagraph, shall not be excluded, and that, for each excluded trust or other legal entity, the court shall, upon the request of any participant or beneficiary of such trust or entity, at any time after the commencement of the case, order the appointment of a separate committee of creditors pursuant to section 1102(a)(2) of title 11, United States Code; and

(B) with reference to Insured Bonds, shall mean the monoline insurer insuring such Insured Bond to the extent such insurer is granted the right to vote Insured Bonds for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents pursuant to which such Insured Bond was issued and insured.

(4) INSURED BOND.—The term "Insured Bond" means a bond subject to a financial guarantee or similar insurance contract, policy and/or surety issued by a monoline insurer.

(5) PROPERTY OF THE ESTATE.—The term "property of the estate", when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means property of the debtor.

(6) STATE.—The term "State" when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a) means State or territory when used in reference to the relationship of a State to the municipality of the State or the territorial instrumentality of a territory, as applicable.

(7) TRUSTEE.—The term "trustee", when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means the Oversight Board, except as provided in section 926 of title 11, United States Code. The term "trustee" as described in this paragraph does not mean the U.S. Trustee, an official of the United States Trustee Program, which is a component of the United States Department of Justice.

(d) REFERENCE TO TITLE.—Solely for purposes of this title, a reference to "this title", "this chapter", or words of similar import in a section of title 11, United States Code, made applicable in a case under this title by subsection (a) or to "this title", "title 11", "Chapter 9", "Chapter 11", "the Code", or words of similar import in the Federal Rules of Bankruptcy Procedure made applicable in a case under this title shall be deemed to be a reference to this title.

(e) SUBSTANTIALLY SIMILAR.—In determining whether claims are "substantially similar" for the purpose of section 1122 of title 11, United States Code, made applicable in a case under this title by subsection (a), the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims.

(f) OPERATIVE CLAUSES.—A section made applicable in a case under this title by subsection (a) that is operative if the business of the debtor is authorized to be operated is operative in a case under this title.

**SEC. 302. WHO MAY BE A DEBTOR.**

An entity may be a debtor under this title if—

(1) the entity is—

(A) a territory that has requested the establishment of an Oversight Board or has had an Oversight Board established for it by

(d) Appeal.—The court may not, on account of an appeal from an order for relief, delay any proceeding under this title in the case in which the appeal is being taken, nor shall any court order a stay of such proceeding pending such appeal.

(e) Validity of Debt.—The reversal on appeal of a finding of jurisdiction shall not affect the validity of any debt incurred that is authorized by the court under section 364(c) or 364(d) of title 11, United States Code.

(f) Joint Filing of Petitions and Plans Permitted.—The Oversight Board, on behalf of debtors under this title, may file petitions or submit or modify plans of adjustment jointly if the debtors are affiliates; provided, however, that nothing in this title shall be construed as authorizing substantive consolidation of the cases of affiliated debtors.

(g) Joint Administration of Affiliated Cases.—If the Oversight Board, on behalf of a debtor and one or more affiliates, has filed separate cases and the Oversight Board, on behalf of the debtor or one of the affiliates, files a motion to administer the cases jointly, the court may order a joint administration of the cases.

(h) Public Safety.—This Act may not be construed to permit the discharge of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties.

(i) Voting on Debt Adjustment Plans Not Stayed.—Notwithstanding any provision in this title to the contrary, including sections of title 11, United States Code, incorporated by reference, nothing in this section shall prevent the holder of a claim from voting on or consenting to a proposed modification of such claim under title VI of this Act.

**SEC. 305. LIMITATION ON JURISDICTION AND POWERS OF COURT.**

Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the use or enjoyment by the debtor of any income-producing property.

**SEC. 306. JURISDICTION.**

(a) Federal Subject Matter Jurisdiction.—The district courts shall have—

(1) except as provided in paragraph (2), original and exclusive jurisdiction of all cases under this title; and

(2) except as provided in subsection (b), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, original but not exclusive jurisdiction of all civil proceedings arising under this title, or arising in or related to cases under this title.

(b) Property Jurisdiction.—The district court in which a case under this title is commenced or is pending shall have exclusive jurisdiction of all property, wherever located, of the debtor as of the commencement of the case.

(c) Personal Jurisdiction.—The district court in which a case under this title is pending shall have personal jurisdiction over any person or entity.

(d) Removal, Remand, and Transfer.—

(1) REMOVAL.—A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce the police or regulatory power of the governmental unit, to the district court for the district in which the civil action is pending, if the district court has jurisdiction of the claim or cause of action under this section.

(2) REMAND.—The district court to which the claim or cause of action is removed under paragraph (1) may remand the claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291 or 1292 of title 28, United States Code, or by the Supreme Court of the United States under section 1254 of title 28, United States Code.

(3) TRANSFER.—A district court shall transfer any civil proceeding arising under this title, or arising in or related to a case under this title, to the district court in which the case under this title is pending.

(e) Appeal.—

(1) An appeal shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district court.

(2) The court of appeals for the circuit in which a case under this title has venue pursuant to section 307 of this title shall have jurisdiction of appeals from all final decisions, judgments, orders and decrees entered under this title by the district court.

(3) The court of appeals for the circuit in which a case under this title has venue pursuant to section 307 of this title shall have jurisdiction to hear appeals of interlocutory orders or decrees if—

(A) the district court on its own motion or on the request of a party to the order or decree certifies that—

(i) the order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the order or decree involves a question of law requiring the resolution of conflicting decisions; or

(iii) an immediate appeal from the order or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and

(B) the court of appeals authorizes the direct appeal of the order or decree.

(4) If the district court on its own motion or on the request of a party determines that a circumstance specified in clauses (i), (ii), or (iii) of paragraph (3)(A) exists, then the district court shall make the certification described in paragraph (3).

(5) The parties may supplement the certification with a short statement of the basis for the certification issued by the district court under paragraph (3)(A).

(6) Except as provided in section 304(d), an appeal of an interlocutory order or decree does not stay any proceeding of the district court from which the appeal is taken unless the district court, or the court of appeals in which the appeal is pending, issues a stay of such proceedings pending the appeal.

(7) Any request for a certification in respect to an interlocutory appeal of an order or decree shall be made not later than 60 days after the entry of the order or decree.

(f) REALLOCATION OF COURT STAFF.—Notwithstanding any law to the contrary, the clerk of the court in which a case is pending shall reallocate as many staff and assistants as the clerk deems necessary to ensure that the court has adequate resources to provide for proper case management.

**SEC. 307. VENUE.**

(a) IN GENERAL.—Venue shall be proper in—

(1) with respect to a territory, the district court for the territory or, for any territory that does not have a district court, the United States District Court for the District of Hawaii; and

(2) with respect to a covered territorial instrumentality, the district court for the territory in which the covered territorial instrumentality is located or, for any territory that does not have a district court, the United States District Court for the District of Hawaii.

(b) ALTERNATIVE VENUE.—

(1) If the Oversight Board so determines in its sole discretion, then venue shall be proper in the district court for the jurisdiction in which the Oversight Board maintains an office that is located outside the territory.

(2) With respect to paragraph (1), the Oversight Board may consider, among other things—

(A) the resources of the district court to adjudicate a case or proceeding; and

(B) the impact on witnesses who may be called in such a case or proceeding.

**SEC. 308. SELECTION OF PRESIDING JUDGE.**

(a) For cases in which the debtor is a territory, the Chief Justice of the United States shall designate a district court judge to sit by designation to conduct the case.

(b) For cases in which the debtor is not a territory, and no motion for joint administration of the debtor's case with the case of its affiliate territory has been filed or there is no case in which the affiliate territory is a debtor, the chief judge of the court of appeals for the circuit embracing the district in which the case is commenced shall designate a district court judge to conduct the case.

**SEC. 309. ABSTENTION.**

Nothing in this title prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this title.

**SEC. 310.** APPLICABLE RULES OF PROCEDURE.

The Federal Rules of Bankruptcy Procedure shall apply to a case under this title and to all civil proceedings arising in or related to cases under this title.

**SEC. 311.** LEASES.

A lease to a territory or territorial instrumentality shall not be treated as an executory contract or unexpired lease for the purposes of section 365 or 502(b)(6) of title 11, United States Code, solely by reason of the lease being subject to termination in the event the debtor fails to appropriate rent.

**SEC. 312.** FILING OF PLAN OF ADJUSTMENT.

(a) EXCLUSIVITY.—Only the Oversight Board, after the issuance of a certificate pursuant to section 104(j) of this Act, may file a plan of adjustment of the debts of the debtor.

(b) DEADLINE FOR FILING PLAN.—If the Oversight Board does not file a plan of adjustment with the petition, the Oversight Board shall file a plan of adjustment at the time set by the court.

**SEC. 313.** MODIFICATION OF PLAN.

The Oversight Board, after the issuance of a certification pursuant to section 104(j) of this Act, may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of this title. After the Oversight Board files a modification, the plan as modified becomes the plan.

**SEC. 314.** CONFIRMATION.

(a) OBJECTION.—A special tax payer may object to confirmation of a plan.

(b) CONFIRMATION.—The court shall confirm the plan if—

(1) the plan complies with the provisions of title 11 of the United States Code, made applicable to a case under this title by section 301 of this Act;

(2) the plan complies with the provisions of this title;

(3) the debtor is not prohibited by law from taking any action necessary to carry out the plan;

(4) except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that on the

United States Code Annotated
Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
Title IV. Parties

Federal Rules of Civil Procedure Rule 24

Rule 24. Intervention

Currentness

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

**(1)** is given an unconditional right to intervene by a federal statute; or

**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

**(1)** ***In General.*** On timely motion, the court may permit anyone to intervene who:

**(A)** is given a conditional right to intervene by a federal statute; or

**(B)** has a claim or defense that shares with the main action a common question of law or fact.

**(2)** ***By a Government Officer or Agency.*** On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

**(A)** a statute or executive order administered by the officer or agency; or

**(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order.

**(3)** ***Delay or Prejudice.*** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; December 29, 1948, effective October 20, 1949; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007.)

**ADVISORY COMMITTEE NOTES**

1937 Adoption

The right to intervene given by the following and similar statutes is preserved, but the procedure for its assertion is governed by this rule:

U.S.C., Title 28 former sections:

45a [now 2323] (Special attorneys; participation by Interstate Commerce Commission; intervention) (in certain cases under interstate commerce laws)

48 [now 2322] (Suits to be against United States; intervention by United States)

401 [now 2403] (Intervention by United States; constitutionality of Federal statute)

U.S.C., Title 40:

276a-2(b) [now 3162(a)(2)] (Bonds of contractors for public buildings or works; rights of persons furnishing labor and materials).

Compare with the last sentence of [former] Equity Rule 37 (Parties Generally--Intervention). This rule amplifies and restates the present federal practice at law and in equity. For the practice in admiralty see Admiralty Rules 34 (How Third Party May Intervene) and 42 (Claims Against Proceeds in Registry). See generally Moore and Levi, *Federal Intervention: I The Right to Intervene and Reorganization* (1936), 45 Yale L.J. 565. Under the codes two types of intervention are provided, one for the recovery of specific real or personal property (2 Ohio Gen.Code Ann. (Page, 1926) § 11263; Wyo.Rev.Stat.Ann. (Courtright, 1931) § 89-522), and the other allowing intervention generally when the applicant has an interest in the matter in litigation (1 Colo.Stat.Ann. (1935) Code Civ.Proc. § 22; La.Code Pract. (Dart, 1932) Arts. 389-394; Utah Rev.Stat.Ann. (1933) § 104-3-24). The English intervention practice is based upon various rules and decisions and falls into the two categories of absolute right and discretionary right. For the absolute right see *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 12, r. 24 (admiralty), r. 25 (land), r. 23 (probate); O. 57, r. 12 (execution); J.A. (1925) §§ 181, 182, 183(2) (divorce); *In re Metropolitan Amalgamated Estates, Ltd.,* (1912) 2 Ch. 497 (receivership); *Wilson v. Church,* 9 Ch.D. 552 (1878) (representative action). For the discretionary right see O. 16, r. 11 (non-joinder) and *Re Fowler,* 142 L.T.Jo. 94 (Ch.1916), *Vavasseur v. Krupp,* 9 Ch.D. 351 (1878) (persons out of the jurisdiction).

**1946 Amendment**

**Note. Subdivision (a).** The addition to subdivision (a)(3) covers the situation where property may be in the actual custody of some other officer or agency--such as the Secretary of the Treasury--but the control and disposition of the property is lodged in the court wherein the action is pending.



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 

**Subdivision (b).** The addition in subdivision (b) permits the intervention of governmental officers or agencies in proper cases and thus avoids exclusionary constructions of the rule. For an example of the latter, see *Matter of Bender Body Co.,* Ref. Ohio 1941, 47 F.Supp. 224, holding that the Administrator of the Office of Price Administration, then acting under the authority of an Executive Order of the President, could not intervene in a bankruptcy proceeding to protest the sale of assets above ceiling prices. Compare, however, *Securities and Exchange Commission v. United States Realty & Improvement Co.,* 1940, 310 U.S. 434, 60 S.Ct. 1044, where permissive intervention of the Commission to protect the public interest in an arrangement proceeding under Chapter XI of the Bankruptcy Act was upheld. See also dissenting opinion in *Securities and Exchange Commission v. Long Island Lighting Co.,* C.C.A.2d 1945, 148 F.2d 252, judgment vacated as moot and case remanded with direction to dismiss complaint, 1945, 325 U.S. 833, 65 S.Ct. 1085. For discussion see Commentary, *Nature of Permissive Intervention Under Rule 24b,* 1940, 3 Fed.Rules Serv. 704; Berger, *Intervention by Public Agencies in Private Litigation in the Federal Courts,* 1940, 50 Yale L.J. 65.

Regarding the construction of subdivision (b)(2), see *Allen Calculators, Inc. v. National Cash Register Co.,* 1944, 64 S.Ct. 905, 322 U.S. 137, 88 L.Ed. 1188.

**1948 Amendment**

The amendment effective Oct. 20, 1949, substituted the reference to "Title 28, U.S.C.A. § 2403" at the end of subdivision (c) for the reference to "the Act of August 24, 1937, c. 754, § 1."

**1963 Amendment**

This amendment conforms to the amendment of Rule 5(a). See the Advisory Committee's Note to that amendment.

**1966 Amendment**

In attempting to overcome certain difficulties which have arisen in the application of present Rule 24(a)(2) and (3), this amendment draws upon the revision of the related Rules 19 (joinder of persons needed for just adjudication) and 23 (class actions), and the reasoning underlying that revision.

Rule 24(a)(3) as amended in 1948 provided for intervention of right where the applicant established that he would be adversely affected by the distribution or disposition of property involved in an action to which he had not been made a party. Significantly, some decided cases virtually disregarded the language of this provision. Thus Professor Moore states: "The concept of a fund has been applied so loosely that it is possible for a court to find a fund in almost any in personam action." 4 Moore's *Federal Practice,* par. 24.09[3], at 55 (2d ed. 1962), and see, e.g., *Formulabs, Inc. v. Hartley Pen Co.,* 275 F.2d 52 (9th Cir.1960). This development was quite natural, for Rule 24(a)(3) was unduly restricted. If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene, and his right to do so should not depend on whether there is a fund to be distributed or otherwise disposed of. Intervention of right is here seen to be a kind of counterpart to Rule 19(a)(2)(i) on joinder of persons needed for a just adjudication: where, upon motion of a party in an action, an absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion. See Louisell & Hazard, *Pleading and Procedure: State and Federal* 749-50 (1962).

The general purpose of original Rule 24(a)(2) was to entitle an absentee, purportedly represented by a party, to intervene in the action if he could establish with fair probability that the representation was inadequate.



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 

Rule 24. Intervention, FRCP Rule 24

Thus, where an action is being prosecuted or defended by a trustee, a beneficiary of the trust should have a right to intervene if he can show that the trustee's representation of his interest probably is inadequate; similarly a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court.

Original Rule 24(a)(2), however, made it a condition of intervention that "the applicant is or may be bound by a judgment in the action," and this created difficulties with intervention in class actions. If the "bound" language was read literally in the sense of res judicata, it could defeat intervention in some meritorious cases. A member of a class to whom a judgment in a class action extended by its terms (see Rule 23(c)(3), as amended) might be entitled to show in a later action, when the judgment in the class action was claimed to operate as res judicata against him, that the "representative" in the class action had not in fact adequately represented him. If he could make this showing, the class-action judgment might be held not to bind him. See *Hansberry v. Lee,* 311 U.S. 32 (1940). If a class member sought to intervene in the class action proper, while it was still pending, on grounds of inadequacy of representation, he could be met with the argument: if the representation was in fact inadequate, he would not be "bound" by the judgment when it was subsequently asserted against him as res judicata, hence he was not entitled to intervene; if the representation was in fact adequate, there was no occasion or ground for intervention. See *Sam Fox Publishing Co. v. United States,* 366 U.S. 683 (1961); cf. *Sutphen Estates, Inc. v. United States,* 342 U.S. 19 (1951). This reasoning might be linguistically justified by original Rule 24(a)(2); but it could lead to poor results. Compare the discussion in *International M. & I. Corp. v. Von Clemm,* 301 F.2d 857 (2d Cir.1962); *Atlantic Refining Co. v. Standard Oil Co.,* 304 F.2d 387 (D.C.Cir.1962). A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action.

The amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i), as amended, unless his interest is already adequately represented in the action by existing parties. The Rule 19(a)(2)(i) criterion imports practical considerations, and the deletion of the "bound" language similarly frees the rule from undue preoccupation with strict considerations of res judicata.

The representation whose adequacy comes into question under the amended rule is not confined to formal representation like that provided by a trustee for his beneficiary or a representative party in a class action for a member of the class. A party to an action may provide practical representation to the absentee seeking intervention although no such formal relationship exists between them, and the adequacy of this practical representation will then have to be weighed. See *International M. & I. Crop. v. Von Clemm,* and *Atlantic Refining Co. v. Standard Oil Co.,* both supra; *Wolpe v. Poretsky,* 144 F.2d 505 (D.C.Cir.1944), cert. denied, 323 U.S. 777 (1944); cf. *Ford Motor Co. v. Bisanz Bros.,* 249 F.2d 22 (8th Cir.1957); and generally, Annot., 84 A.L.R.2d 1412 (1961).

An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.

1987 Amendment

The amendments are technical. No substantive change is intended.

1991 Amendment



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Language is added to bring Rule 24(c) into conformity with the statute cited, resolving some confusion reflected in district court rules. As the text provides, counsel challenging the constitutionality of legislation in an action in which the appropriate government is not a party should call the attention of the court to its duty to notify the appropriate governmental officers. The statute imposes the burden of notification on the court, not the party making the constitutional challenge, partly in order to protect against any possible waiver of constitutional rights by parties inattentive to the need for notice. For this reason, the failure of a party to call the court's attention to the matter cannot be treated as a waiver.

2006 Amendment

New Rule 5.1 replaces the final three sentences of Rule 24(c), implementing the provisions of 28 U.S.C. § 2403. Section 2403 requires notification to the Attorney General of the United States when the constitutionality of an Act of Congress is called in question, and to the state attorney general when the constitutionality of a state statute is drawn into question.

2007 Amendment

The language of Rule 24 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

The former rule stated that the same procedure is followed when a United States statute gives a right to intervene. This statement is deleted because it added nothing.

Notes of Decisions (2476)

Fed. Rules Civ. Proc. Rule 24, 28 U.S.C.A., FRCP Rule 24
Including Amendments Received Through 8-1-17

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Federal Rules of Bankruptcy Procedure (Refs & Annos)
Part VII. Adversary Proceedings

Federal Rules of Bankruptcy Procedure, Rule 7024

Rule 7024. Intervention

Currentness

Rule 24 F.R.Civ.P. applies in adversary proceedings.

**ADVISORY COMMITTEE NOTES**

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Intervention in a case and intervention in an adversary proceeding must be sought separately.

Notes of Decisions (93)

Fed.Rules Bankr.Proc. Rule 7024, 11 U.S.C.A., FRBP Rule 7024
Including Amendments Received Through 8-1-17

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 11. Bankruptcy (Refs & Annos)
Chapter 11. Reorganization (Refs & Annos)
Subchapter I. Officers and Administration (Refs & Annos)

11 U.S.C.A. § 1102

§ 1102. Creditors' and equity security holders' committees

Currentness

**(a)(1)** Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

**(2)** On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

**(3)** On request of a party in interest in a case in which the debtor is a small business debtor and for cause, the court may order that a committee of creditors not be appointed.

**(4)** On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern (as described in section 3(a)(1) of the Small Business Act), if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate amount of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.

**(b)(1)** A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

**(2)** A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

**(3)** A committee appointed under subsection (a) shall--



WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 

**(A)** provide access to information for creditors who--

**(i)** hold claims of the kind represented by that committee; and

**(ii)** are not appointed to the committee;

**(B)** solicit and receive comments from the creditors described in subparagraph (A); and

**(C)** be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2626; Pub.L. 98-353, Title III, § 499, July 10, 1984, 98 Stat. 384; Pub.L. 99-554, Title II, § 221, Oct. 27, 1986, 100 Stat. 3101; Pub.L. 103-394, Title II, § 217(b), Oct. 22, 1994, 108 Stat. 4127; Pub.L. 109-8, Title IV, §§ 405, 432(b), Apr. 20, 2005, 119 Stat. 105, 110.)

Notes of Decisions (105)

11 U.S.C.A. § 1102, 11 USCA § 1102
Current through P.L. 115-43. Also includes P.L. 115-45. Title 26 current through 115-45.

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

ADD-20

§ 1291. Final decisions of district courts, 28 USCA § 1291

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 83. Courts of Appeals (Refs & Annos)

28 U.S.C.A. § 1291

§ 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

Notes of Decisions (3409)

28 U.S.C.A. § 1291, 28 USCA § 1291
Current through P.L. 115-45. Title 26 current through 115-46.

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

ADD-21

UNITED STATES BANKRUPTCY COURT

DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>*as representative of*<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>Debtors. | Docket No. 3:17-BK-3283(LTS)<br><br>Title III<br><br>(Jointly Administered)<br><br>August 9, 2017 |

| | |
|---|---|
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>*as representative of*<br><br>Employees Retirement System of the Government of the Commonwealth of Puerto Rico,<br><br>Debtor. | Docket No. 3:17-BK-3566(LTS)<br><br>(Joint Administration Requested) |

| | |
|---|---|
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>*as representative of*<br><br>Puerto Rico Highways and Transportation Authority,<br><br>Debtor. | Docket No. 3:17-BK-3567(LTS)<br><br>(Joint Administration Requested) |

| | |
|---|---|
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>*as representative of*<br><br>Puerto Rico Electric Power Authority,<br><br>Debtor. | Docket No. 3:17-BK-4780(LTS)<br><br>(Joint Administration Requested) |

OMNIBUS HEARING

BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

UNITED STATES DISTRICT COURT JUDGE.

PRESENT IN THE OMNIBUS HEARING:

The Honorable U.S. Chief Bankruptcy Judge Barbara Houser

The Honorable U.S. Magistrate Judge Judith Dein

APPEARANCES:

| | |
|---|---|
| For the U.S. Trustee Region 21: | Ms. Monsita Lecaroz Arribas, AUST |
| For The Commonwealth of Puerto Rico, et al.: | Mr. Martin Bienenstock, PHV<br>Mr. Chris Theodoridis, PHV |
| For Peaje Investment, LLC: | Mr. Allan S. Brilliant, PHV |
| For Stericycle of Puerto Rico: | Mr. Adrian Linares Palacios, Esq. |

APPEARANCES, Continued:

| | |
|---|---|
| For Ad Hoc Group of General Obligation Bondholders: | Mr. Andrew N. Rosenberg, PHV |
| For Ambac Assurance Corporation: | Mr. Dennis F. Dunne, PHV |
| For Assured Guaranty Corp.: | Ms. Ellen M. Halstead, PHV |
| For Puerto Rico Fiscal Agency and Financial Advisory Authority: | Ms. Suzzanne Uhland, PHV<br>Mr. Peter Friedman, PHV<br>Mr. Nathan Haynes, PHV<br>Ms. Nancy Mitchell, PHV |
| For Official Committee of Unsecured Creditors: | Mr. Luc Despins, PHV |
| For Financial Guaranty Insurance Company: | Mr. Martin Sosland, PHV |
| For Ad Hoc Group of PREPA Bondholders: | Mr. Gregory Horowitz, PHV |
| For U.S. Bank: | Mr. Clark Whitmore, PHV |
| For National Public Finance Guaranty Corp: | Mr. Salvatore Romanello, PHV |
| For Autonomous Municipality of Ponce: | Mr. Paul Glassman, PHV |
| For South Parcel: | Mr. Victor Rivera Rios, Esq. |
| For Scotia Bank of Puerto Rico: | Mr. Emil Kleinhaus, PHV |
| For University of Puerto Rico Retirement System Trust: | Mr. Jose Ramirez Coll, Esq. |
| For the Ad Hoc Puerto Rico Municipalities Committee: | Mr. Michael Rochelle, PHV |

APPEARANCES, Continued:

| | |
|---|---|
| For Puerto Rico Fund: | Ms. Cheryl Sloane, PHV |
| For Solus Alternative Asset Management: | Mr. Nicholas Baker, PHV |
| For Mutual Fund Group: | Mr. Philip Bentley, PHV |
| For Ad Hoc Retiree Committee: | Mr. Robert Gordon, PHV |
| For Canyon Balanced Master Fund Ltd., et al.: | Mr. Susheel Kirpalani, PHV |
| For National Guaranty: | Mr. Jonathan Polkes, PHV |

Proceedings recorded by stenography. Transcript produced by CAT.

pay bondholders. The receiver would be subject to exactly the same requirements and restrictions as the debtor currently.

THE COURT: Thank you.

MR. HOROWITZ: Thank you, Your Honor.

THE COURT: Decision is reserved.

Next on the agenda as afternoon item one is the creditors' committee's motion to intervene in the Assured proceeding.

MR. HOROWITZ: I apologize, Your Honor. Gregory Horowitz. I just wanted to make one -- to rise for one point. I wanted, Your Honor --

THE COURT: Just one second.

Folks, court is still in session, so if you're leaving, leave in silence without chatting on the way out. Thank you.

MR. HOROWITZ: I just wanted Your Honor to know, should the Court wish for more time since you've taken it under advisement, if you wish for us to waive the 30-day requirement, the movants are prepared to do that.

THE COURT: The Court would be grateful for that, given the travel and all that are happening this week. So thank you.

MR. DESPINS: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. DESPINS: Luc Despins for the committee. I know

it's been a long day and I'm sure you already -- I shouldn't say you've already made up your mind, but you have a good idea of what you're going to do. So I won't spend a lot of time arguing the case law. I just want to say a couple of points about this.

The first one is this is the Assured -- this is the proceeding in our case, in the Commonwealth's case, so that's very important. We are not seeking full, whatever you call it, party intervention. We are prepared to adopt the Oversight Board's request that we limit our intervention -- as reflected in the revised Order that was submitted attached to our reply that basically says we can be heard, we can file briefs, but we cannot, for example, block a settlement because we're a party.

So given the very limited intervention that we're seeking in our own case, we believe this relief should be granted. But I'll be happy to answer any questions if Your Honor has questions regarding the proposed order or any other matter.

THE COURT: I don't have questions.

MR. DESPINS: Thank you.

THE COURT: Thank you. Did anyone -- yes.

MR. ROMANELLO: Your Honor, Salvatore Romanello from Weil, Gotshal & Manges on behalf of National Public Finance Guaranty Corporation.

Your Honor, I will follow Mr. Despin's lead here. It's pretty straight forward. We don't think 1109(p) provides a right to intervene. In an adversary proceeding, we don't think UCC should intervene. But the real issue I want to get to is the prejudice here.

Your Honor knows better than anybody else how much paper has been filed in this case, and to streamline the matters. And even scheduling is very difficult, as you can imagine with all the parties.

We have an opposition to a Motion to Dismiss that's due in the next few days. We do not want the UCC to have the ability to file a reply. And the reason for that is one of two things could happen. One, it could be duplicative of what the Oversight Board is filing. In that case, there's no need for it.

Two, if they're filing a reply to our opposition, the only thing that could happen is they could raise additional arguments, and that leaves us with having to write to the Court to file a surreply. So it's completely duplicative. They haven't asserted a position separate and apart from what the Oversight Board has asserted. They don't have interim fact -- they don't have interim standing, and the motion should be denied.

Thank you, Your Honor.

THE COURT: Thank you.

MR. ROMANELLO: One other thing, Your Honor. Our oppositions in motion to dismiss are due today. We filed the stipulation on Monday. Again, we realize the Court is very busy, but it would be a short extension given this week's hearing here. The extension would go until Monday for the opposition. It's on consent.

THE COURT: I'm sorry. I thought that we had entered that. I missed the paperwork.

MR. ROMANELLO: It may have been entered today. I was told that we hadn't received it, so --

THE COURT: Well, it looks like we didn't, and so I had intended to grant the extension.

The extension is granted, and we'll catch up with the paperwork.

MR. ROMANELLO: Thank you, Your Honor.

THE COURT: Thank you.

Mr. Despins.

MR. DESPINS: If I may?

THE COURT: Yes.

MR. DESPINS: Two minutes, Your Honor. I think the argument by counsel -- first of all, let me just say if the Court wants to condition our intervention on that requirement, so be it. We don't think it's necessary, but so be it. But I would say that we cited cases regarding the fact that the committee as a statutory creature should be viewed in terms of

intervention differently than other creditors. So this issue of injury and fact, that has not been adopted in the context of creditors' committees.

We cited a District Court, which of course I'm not doubting Your Honor in any way, but it basically says in the context of an appeal by a creditors' committee, which is a higher standing, that the creditors' committee cannot be deemed not to have standing to appeal just because an economic harm cannot be shown by the committee.

So we want to -- that's all in our reply, but we wanted to make sure that was before the Court.

Thank you.

THE COURT: Thank you. I did read everything carefully before I came, and I've listened carefully. And I understand now that the requested mode of intervention or participation is that outlined in the proposal from the Oversight Board and adopted by the UCC. The application is nonetheless denied.

In Re: Thompson, the First Circuit held quite clearly that non-party participation in an adversary is dependent on Rule 24 intervention. And that's the Thompson opinion at 965 F.2d at 1141.

So absent a proper basis to intervene on Rule 24, and this Court has very carefully considered all of the arguments in that connection and finds that there is no basis to

intervene under Rule 24 presented on this record. The UCC is not entitled to participate in the adversary, in even the limited formal fashion that it has proposed. Therefore, the Motion to Intervene is denied in its entirety.

And shall -- may I simply adopt my prior remarks as to the Peaje adversaries?

MR. DESPINS: Yes, Your Honor.

THE COURT: The motion to intervene in the Peaje adversaries is denied for the same reason.

MR. BRILLIANT: Thank you, Your Honor. May I be excused?

THE COURT: Yes.

And so that takes us to the senior COFINA bondholders' modification motion. And Mr. Kirpalani, before you begin, I think it only fair to tell you that I perceive this as fundamentally a motion for reconsideration. And so you might want to tailor your remarks to that perspective because that is my perspective.

MR. KIRPALANI: Okay. Thank you, Your Honor. For the record, Susheel Kirpalani from Quinn Emanuel on behalf of the COFINA Senior Bondholders Coalition.

Your Honor, during the morning session, I believe it was in connection with one of the other debtors, you had a remark that I wrote down, because I thought it was apt for my motion. And what you said, Judge, was quote, every day our

U.S. DISTRICT COURT )
DISTRICT OF PUERTO RICO)

I certify that this transcript consisting of 211 pages is a true and accurate transcription to the best of my ability of the proceedings in this case before the Honorable United States District Court Judge Laura Taylor Swain on August 9, 2017.

S/ Amy Walker
Amy Walker, CSR 3799
Official Court Reporter